**ORIGINAL**

FILED IN OPEN COURT
U.S.D.C. Atlanta

MAR 2 7 2018

James N. Hatten, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Indictment |
| *v.* | No.  1  18-CR-98 |
| MITZI BICKERS | **UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

## Count 1

*(Conspiracy to Commit Bribery – 18 U.S.C. § 371)*

1. From in or about 2010 to at least until on or about May 22, 2013, the exact dates being unknown, in the Northern District of Georgia and elsewhere, defendant MITZI BICKERS knowingly and willfully conspired, agreed, and had a tacit understanding with Elvin R. Mitchell, Jr., Charles P. Richards, Jr. and others known and unknown to commit violations of the laws of the United States, that is - bribery involving a local government receiving federal funds, in that, BICKERS, an agent of the City of Atlanta, Georgia (a local government), corruptly solicited and demanded for her benefit and accepted and agreed to accept a thing of value from a person with the intent to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of Atlanta government, involving a thing of value of at least $5,000, in any one-year period where the City of Atlanta government received benefits in excess of $10,000 under a federal program, involving a grant, contract, subsidy, loan, guarantee, insurance and other form, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## Object of the Conspiracy

2. As a City of Atlanta employee from in or about February 2010 to on or about May 22, 2013, when she left employment with the City of Atlanta, BICKERS conspired to enrich herself and others by soliciting and accepting payments directly and indirectly from Mitchell and Richards and their companies in exchange for her agreement to represent their businesses and to obtain lucrative City of Atlanta contracts for their companies through bribery.

## Background

At all times relevant to this Indictment:

3. Atlanta is the capital and most populous city in Georgia with a metropolitan area population of approximately 5.7 million people. The City of Atlanta is a local government located in the Northern District of Georgia with an operational and enterprise budget of more than $2 billion. In serving its citizens, the City of Atlanta regularly contracts with individuals and businesses to provide public services. City of Atlanta contracts often are valued at millions of dollars or more.

4. In or about 2004, S.B. incorporated the Bickers Group, Inc. as a for-profit corporation. In or about May 2010, BICKERS filed the 2010 Annual Registration for the Bickers Group with the Georgia Secretary of State, listing herself as its Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and Registered Agent. In or about 2014, BICKERS filed an application for Reinstatement of a Georgia For-Profit Corporation, again listing herself as the CEO, CFO, and Registered Agent of the Bickers Group. The Bickers Group focused on political and campaign consulting work.

2

5. In or about 2006, S.B. incorporated Chateau Land Company, Inc. on behalf of BICKERS. In Georgia Secretary of State filings, Chateau Land Company listed BICKERS as its CFO and Registered Agent. In or about 2010, Chateau Land Company was administratively dissolved.

6. In or about 2007, K.J. incorporated Pirouette Dance Company as a dance and fitness company. In or about 2012, Pirouette Dance Company became Pirouette Companies, LLC, changing its focus from dance and fitness to political consulting and marketing. In or about 2012, BICKERS began to work for Pirouette Companies.

7. In or about 2009, BICKERS participated in Atlanta's mayoral campaign and, after the election, became an employee of the City of Atlanta. From in or about February 2010 to in or about May 22, 2013, BICKERS served as the Director of Human Services for the City of Atlanta. As the City of Atlanta's Director of Human Services, BICKERS earned approximately $50,391 in 2010, $57,986 in 2011, $42,849 in 2012, and $28,046 in 2013, according to her tax returns.

8. Mitchell was the owner and principal of the following construction companies: (a) E.R. Mitchell Company; (b) Cascade Building System, LLC.; (c) E.R. Mitchell Group, Inc.; and (d) EC & WT Construction Company, Inc., d/b/a E.R. Mitchell Construction Co.

9. Richards served as the owner and principal of the following construction companies: (a) C.P. Richards Construction Co., Inc. and (b) C.P. Richards & Associates, Inc.

10. From in or about 2010 to in or about 2015, Mitchell's and Richards' companies actively sought and received lucrative government contracts with the City of Atlanta, including contracts relating to emergency snow and debris

removal, sidewalk maintenance and repair, and emergency bridge reconstruction. During this period, the City of Atlanta awarded and paid Mitchell's and Richards' businesses approximately $17 million for government contracts they secured.

### The City of Atlanta's Ethics and Procurement Codes

11. The City of Atlanta's Code of Ethics governs the conduct of City of Atlanta officials and employees. Its purpose is "protecting the integrity" of the City of Atlanta government and promoting the public trust by prohibiting conflicts of interest, by requiring certain officials and employees to disclose outside financial relationships and transactions. The City of Atlanta's Ethics Code encourages city officials and employees to act in its best interest and to avoid the appearance of impropriety.

12. According to the City of Atlanta's Code of Ethics § 2-812, no official or employee may participate directly or indirectly through decision making, approval, recommendation or rendering advice in any matter pertaining to any contract or subcontract and any solicitation or proposal or seek to influence the votes or decisions of others with respect thereto when the official or employee knows or with reasonable investigation should know that there is a financial or personal interest possessed by the official or employee or a business in which the person serves as "an officer, director, stockholder, … partner or employee."

13. According to the City of Atlanta's Code of Ethics § 2-818, "no official or employee shall solicit or accept anything of value, in any form whatsoever, calculated to influence a vote, decision or the exercise of official authority in any manner involving the city."

14. According to the City of Atlanta's Code of Ethics § 2-814(a)(1), certain City of Atlanta officials and employees must disclose all "positions of employment held by the official or employee in any business . . . for all or any portion of the year, including a description of the type of business and the existence and nature of any business done by the employer entity with the city." City of Atlanta's Code of Ethics § 2-814(a)(2), further requires that these officials and employees disclose "[e]ach and every source of income from any business received by such official or employee in excess of $5,000 derived from any single source in the preceding calendar year."

15. The Department of Procurement is responsible for facilitating the procurement of commodities and services for the City of Atlanta. The mission of the Department of Procurement "is to model best practices in public purchasing while promoting equity, fairness, and economic inclusion."

16. According to the City of Atlanta's Procurement Code §  2-1482, any City of Atlanta officer or employee who has a direct or indirect financial interest in any procurement matter, other than by a competitive sealed bid, must disclose the nature of the financial interest to the City of Atlanta's Chief Procurement Officer.

17. According to the City of Atlanta's Procurement Code § 2-1484, it is unethical for any person to offer, give or agree to give any employee or former employee or for any employee or former employee to solicit, demand, accept or agree to accept from another person a gratuity or an offer of employment in connection with any decision, approval, disapproval, recommendation, influencing the content of any specification or procurement standard, rendering of advice, or other matter pertaining to any contract or subcontract or to any solicitation or proposal therefor.

18. According to the City of Atlanta's Procurement Code § 2-1485, it is unethical for a person to be retained or to retain a person to solicit or secure a city contract upon an agreement or understanding for a commission, percentage, brokerage or contingent fee.

19. According to the City of Atlanta's Procurement Code § 2-1487, it is unethical for any employee or former employee willfully to use confidential information for actual or anticipated personal gain or for the actual or anticipated personal gain of any other person.

## Manner and Means

20. Beginning in or about 2010, Mitchell and Richards agreed to pay bribes to BICKERS, who was a City of Atlanta employee at the time, to secure City of Atlanta contracts for their businesses. In some instances, Mitchell and Richards referred to the bribes as "up-front money." However, Mitchell and Richards typically paid BICKERS after the City of Atlanta had paid them for construction work performed by their businesses. In exchange for these payments and the promise of these payments, BICKERS agreed to represent Mitchell, Richards, and their companies on matters relating to City of Atlanta contracting – notwithstanding that BICKERS was prohibited from doing so as a City of Atlanta employee. During this period, BICKERS also provided sensitive contracting information to Mitchell and Richards that assisted them in submitting contract bids.

21. In early 2013, BICKERS's financial ties to the Pirouette Companies were exposed publically. Based on this public disclosure, BICKERS amended her 2013 City of Atlanta Financial Disclosure Statement in which she revealed her financial

relationship with the Pirouette Companies.  On or about May 22, 2013, BICKERS resigned her position with the City of Atlanta.

## Overt Acts

### A. City of Atlanta - Financial Disclosure Statements

22. Under the City of Atlanta's Ethics Code and as part of her employment, BICKERS was required to disclose annually all positions of employment she held in any business for any portion of the year, including a description of the type of business and the existence and nature of any business done by the employer entity with the City of Atlanta.  During her tenure with the City of Atlanta, BICKERS completed five Financial Disclosure Statements, all of which BICKERS submitted electronically via the Internet.

### Financial Disclosure Statement 2011

23. On or about February 16, 2011, BICKERS completed and electronically signed a 2011 City Financial Disclosure Statement under penalty of perjury. On the Financial Disclosure Statement, BICKERS identified her position as "[e]mployee in the office of the Mayor who report[ed] directly to the Mayor" and attested that since January 1, 2010:

    a.  She had been employed by the City of Atlanta and the Bickers Group; and

    b.  She had received over $5,000 in annual income from the Bickers Group.

### Financial Disclosure Statement 2012

24. On or about February 15, 2012, BICKERS completed and electronically signed a 2012 City Financial Disclosure Statement under penalty of perjury. On the Financial Disclosure Statement, BICKERS identified her position as

"Commissioner; Department Head; or its equivalent" and attested that since January 1, 2011:

   a. She had not been self-employed or employed by any corporation, partnership, proprietorship, other business entity, non-profit organization, or other governmental entity besides the City of Atlanta;

   b. She had not received more than $5,000 in annual income from any corporation, partnership, proprietorship, non-profit organization, or other business entity, including limited partnerships or limited liability corporations; and

   c. She had not been paid or compensated for appearing on behalf of any person, client, or private interest before any city agency.

BICKERS submitted the 2012 City Financial Disclosure Statement, knowing that it contained false and fraudulent answers and representations.

### Financial Disclosure Statement 2013

25. On or about January 28, 2013, BICKERS completed and electronically signed a 2013 Financial Disclosure Statement under penalty of perjury. On the Financial Disclosure Statement, BICKERS identified her position as "Commissioner; Department Head; or its equivalent" and attested that since January 1, 2012:

   a. She had not been self-employed or employed by any corporation, partnership, proprietorship, other business entity, non-profit organization, or other governmental entity besides the City of Atlanta and Emmanuel Baptist Church;

   b. She had not received more than $5,000 in annual income from any corporation, partnership, proprietorship, non-profit organization, or other

business entity, including limited partnerships or limited liability corporations; and

c. She had not been paid or compensated for appearing on behalf of any person, client, or private interest before any city agency.

BICKERS submitted the 2013 City Financial Disclosure Statement, knowing that it contained false and fraudulent answers and representations.

### Re-Submitted Financial Disclosure Statement 2013

26. In early 2013, it was publicly reported that BICKERS's 2013 City Financial Disclosure Statement contained false information because BICKERS failed to accurately disclose her employment with the Pirouette Companies as required.

27. On or about March 19, 2013, BICKERS re-submitted and electronically signed another 2013 Financial Disclosure Statement under penalty of perjury. On the Financial Disclosure Statement, BICKERS identified her position as an "[e]mployee in the office of the Mayor who report[ed] directly to the Mayor" and attested that since January 1, 2012:

a. She had in fact been self-employed or employed outside the City of Atlanta by Pirouette Companies and Emmanuel Baptist Church; and

b. She had in fact received more than $5,000 in annual income from both Pirouette Companies and Emmanuel Baptist Church.

### Financial Disclosure Statement 2014

28. On or about March 31, 2014, BICKERS submitted and electronically signed a 2014 City Financial Disclosure Statement under penalty of perjury. On the Financial Disclosure Statement, BICKERS identified her position as "other city employee" and "management analyst" and attested that since January 1, 2013:

9

a. She had been self-employed or employed outside the City of Atlanta by Pirouette Companies and Emmanuel Baptist Church;

b. She had received more than $5,000 in annual income from both Pirouette Companies and Emmanuel Baptist Church; and

c. She had not been paid or compensated for appearing on behalf of any person, client, or private interest before any city agency.

BICKERS submitted the 2014 City Financial Disclosure Statement, knowing that some of her answers were false and fraudulent.

## B. Bribe Payments to Bickers

29. From approximately 2010 to 2015, Mitchell, Richards and their companies paid over two million dollar in bribe payments to BICKERS, the Bickers Group, Chateau Land Company, and the Pirouette Companies in an attempt get City of Atlanta contracts.

### 2010 Payments

30. From approximately January to December 2010, Mitchell withdrew approximately $111,000 in cash.

31. From approximately January to December 2010, approximately $94,000 in cash was deposited into accounts BICKERS owned or controlled.

### January and February 2011 Payments

32. On or about January 26, 2011, the City of Atlanta paid Mitchell through Cascade Building Systems approximately $1.2 million for contract work.

a. From approximately January 27 to on or about February 1, 2011, Mitchell withdrew approximately $390,000 from accounts he owned or controlled, mostly in cash.

b. From approximately January 28 to on or about February 1, 2011, approximately $93,000 in cash was deposited into accounts owned or controlled by BICKERS. The cash deposits were broken up into approximately 15 transactions of $10,000 or less and spread across approximately 10 separate bank accounts owned or controlled by BICKERS.

c. From in or about February 3 to 11, 2011, approximately $200,000 in cash was deposited into a real estate account for the benefit of BICKERS. BICKERS subsequently used the $200,000 and other funds to buy a lakefront home in June 2011.

### June 2011 Payments

33. In June 2011, the City of Atlanta paid Mitchell's and Richards's for contract work performed by their businesses.

a. From in or about June 15 to 23, 2011, Mitchell withdrew about $181,000 from accounts he owned or controlled: (i) by writing two checks to cash for $56,000 and $100,000, and (ii) by withdrawing $25,000 in cash.

b. On or about June 20, 2011, four structured cash deposits of $9,500 were made into four different bank accounts owned or controlled by BICKERS.

c. From in or about June 24 to 27, 2011, seven additional structured cash deposits of $9,500 or more were made into four different bank accounts owned or controlled by BICKERS.

d. On or about June 27, 2011, $85,000 in cash was deposited into a Bickers Group bank account.

11

e. On or about June 27, 2011, an account owned or controlled by BICKERS received two wire transfers totaling $53,000 from C.P. Richards Construction.

f. On or about June 28, 2011, $20,000 in cash was deposited into an account owned or controlled by BICKERS.

34. After these deposits were made into BICKERS's accounts, BICKERS immediately wired money from three personal and business accounts to buy her home. Specifically:

a. Between on or about June 27 and 28, 2011, BICKERS wired approximately $81,000, $104,000, and $114,000 from a personal account to a closing attorney for the purchase of her home.

b. On or about June 28, 2011, BICKERS purchased a lakefront home in Jonesboro, Georgia for approximately $775,000.

### January 1 to December 31, 2011 Payments

35. In 2011, BICKERS deposited or caused to be deposited approximately $465,000 into accounts she owned or controlled. Furthermore, BICKERS caused to be deposited an additional $200,000 into a real estate account that she used to purchase her lakefront residence.

36. In her 2011 Tax Return, which she filed under penalty of perjury, BICKERS represented to the Internal Revenue Service ("IRS") that her total income for 2011 was $57,986, even though she had received significant payments directly and indirectly from Mitchell and Richards in that year.    Based on the false representations in her return, the IRS issued BICKERS a tax refund of $3,924. In

fact, Bickers made approximately $650,000 in income in 2011 and failed to pay the required amount of federal income tax.

### 2013 Payments

37. On or about January 29, 2013, C.P. Richards Construction paid $20,000 to Mitchell through Cascade Building Systems.

38. On or about January 29, 2013, Mitchell wrote a $16,000 check to E.R. Mitchell Construction.

39. On or about January 29, 2013, Mitchell wrote a $16,000 check from E.R. Mitchell Construction to "cash," intending that some or all of the money would be used to pay City of Atlanta officials in exchange for contract work.

40. On or about April 15, 2013, C.P. Richards Construction Co. paid $11,000 to Cascade Building Systems.

41. On or about April 16, 2013, Mitchell wrote a $9,500 check to E.R. Mitchell Construction.

42. On or about April 16, 2013, Mitchell wrote a $9,500 check from E.R. Mitchell Construction to "cash," intending that some or all of the money would be used to pay City of Atlanta officials in exchange for contract work.

### 2014 Payments

43. In or about January 2014, the City of Atlanta paid C.P. Richards Construction approximately $162,000 for work the company performed.  On or about January 15, 2014, C.P. Richards Construction wrote a check to Pirouette Companies for $15,000.

44. On or about February 13, 2014, the City of Atlanta paid Cascade Building Systems approximately $322,104 for services provided by the company during a snowstorm in Atlanta in or about January and February 2014.

13

45. On or about February 14 and 18, 2014, Mitchell made two $9,500 withdrawals on both days.

46. On or about May 19, 2014, he withdrew and additional $150,000 from an account he owned or controlled.

### February to April 2014

47. From approximately February 28 to March 5, 2014, the City of Atlanta made a series of payments to Mitchell's company, Cascade Building Systems, totaling $3,279,567 for services related to the 2014 snowstorm and debris removal.

   a. On or about March 7, 2014, Mitchell wrote a $50,000 check from the Cascade Building Systems account to BICKERS that was deposited into BICKERS's personal account on the same day.

   b. On or about March 7, 2014, Mitchell also wrote $150,000 and $50,000 checks from his Cascade Building Systems bank account. Also, on or about March 7, 2014, $50,000 was deposited into BICKERS's personal account and $150,000 was deposited into an account owned or controlled by Pirouette Companies.

   c. On or about March 12, 2014, Mitchell wrote a $44,000 check to BICKERS that was deposited in her personal account.

   d. On or about March 12, 2014, Mitchell withdrew $100,000 in cash. Also, on or about March 12, 2014, $100,000 in cash was deposited into an account owned or controlled by Pirouette Companies.

   e. On or about March 26, 2014, Mitchell wrote a $100,000 check to the Bickers Group and a $50,000 check to Pirouette Companies that were both

deposited on the same day into bank accounts owned and controlled by the Bickers Group and Pirouette Companies.

f.  On or about April 1, 2014, Mitchell withdrew $100,000 in cash from a bank account he owned or controlled, and on the same day, $100,000 was deposited into an account owned or controlled by Pirouette Companies.

g.  On or about April 1, 2014, Mitchell also wrote a $110,000 check to the Bickers Group that was immediately deposited into its business account.

h.  On or about April 1, 2014, Mitchell also wrote a $30,000 check to BICKERS that was immediately deposited into her personal account.

48. Between approximately March and June 2014, BICKERS accumulated personal charges from Gucci, Delta Air Lines, the Ritz-Carlton Aruba, Carnival Cruise Line, Disney Resorts, and various home contracting businesses. These purchases were funded, at least in part, with the proceeds of the bribery scheme.

49. BICKERS also caused the Bickers Group (her political consulting firm) to make the following purchases:

a.  On or about May 24, 2014, the Bickers Group purchased two Yamaha WaveRunners for approximately $21,091.88;

b.  On or about July 3, 2014, the Bickers Group purchased two additional Yamaha WaveRunners for approximately $24,726.10; and

c.  In or about November 2014, the Bickers Group purchased an all-terrain vehicle and a trailer for approximately $6,638 and $1,325.

All in violation of Title 18, United States Code, Section 371.

## Count 2

*(Conspiracy to Commit Bribery – 18 U.S.C. § 371)*

50. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 2 through 49, as if fully set forth herein.

## Object of the Conspiracy

51. After leaving employment with the City of Atlanta in or about May 22, 2013, BICKERS conspired to enrich herself and others by soliciting and accepting payments directly and indirectly from Mitchell, Richards, and their companies in exchange for BICKERS's agreement to represent their businesses and to obtain lucrative City of Atlanta contracts for their companies through the bribery of public officials.

52. From in or about May 23, 2013, to at least until in or about 2015, the exact dates being unknown, in the Northern District of Georgia and elsewhere, defendant MITZI BICKERS knowingly and willfully conspired, agreed, and had a tacit understanding with Elvin R. Mitchell, Jr., Charles P. Richards, Jr., and others known and unknown to commit violations of the laws of the United States, that is - bribery involving a local government receiving federal funds, in that BICKERS corruptly gave, offered, and agreed to give a thing of value to a person with the intent to influence and reward an agent of the City of Atlanta government (a local government), in connection with any business, transaction, and series of transactions of the City of Atlanta government, involving a thing of value of at least $5,000, in any one-year period where the City of Atlanta government received benefits in excess of $10,000 under a federal program involving, a grant, contract,

subsidy, loan, guarantee, insurance and other form, in violation of Title 18, United States Code, Section 666(a)(2), all in violation of Title 18, United States Code, Section 371.

### Counts 3 to 5

*(Money Laundering – 18 U.S.C. § 1957)*

53. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 2 through 49, as if fully set forth herein.

54. Between January 1 and December 31, 2014, Mitchell, Richards, and their businesses paid BICKERS, the Bickers Group, Pirouette Companies, and other companies owned or associated with BICKERS almost $2 million in proceeds relating to the bribery scheme set forth in Count 2 of this Indictment.

55. Between in or about April 30 and May 9, 2014, Mitchell caused Cascade Building Systems to pay the Bickers Group approximately $85,700.

56. On or about May 9, 2014, BICKERS purchased a 2014 GMC Acadia Denali by writing a check for approximately $46,582.40 drawn from the Bickers Group's bank account.

57. On or about May 23, 2014, Mitchell caused Cascade Building Systems to pay the Bickers Group approximately $21,000.

58. On or about May 23, 2014, BICKERS purchased a 2014 Yamaha WaveRunner (model VX1800A-NB) and a 2013 Yamaha WaveRunner (model SJ700) by writing a check for approximately $21,091.88 drawn from the Bickers Group's bank account.

59. Between on or about June 30 and July 3, 2014, Mitchell caused Cascade Building Systems to pay the Bickers Group approximately $22,000.

60. On or about July 3, 2014, BICKERS purchased a 2013 Yamaha WaveRunner (model GX1800A) and a 2014 Yamaha WaveRunner (FA 1800-N) for approximately $24,726.10 with a Bickers Group debit or credit card.

61. On or about the dates listed below, in the Northern District of Georgia and elsewhere, the defendant MITZI BICKERS, aided and abetted by Elvin R. Mitchell, Jr. and others known and unknown, knowingly engaged and attempted to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate commerce, each such transaction knowingly involving criminally-derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is – the bribery scheme described in Count 2 of this Indictment, in violation of Title 18, United States Code, Section 666(a)(2), each transaction constituting a separate count as set forth below:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| 3 | May 9, 2014 | Purchase of a 2014 GMC Acadia Denali with a check drawn from the Bickers Group bank account at Capitol City Bank for $46,582.40. |
| 4 | May 23, 2014 | Purchase of two WaveRunners with a check drawn from the Bickers Group bank account at Capitol City bank for $21,091.88. |
| 5 | July 3, 2014 | Purchase of two WaveRunners with a check drawn from the Bickers Group bank account at Capitol City for $24,726.10. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

### Counts 6 to 9

*(Wire Fraud – 18 U.S.C. §§ 1343 and 1349)*

62. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 2 through 49, as if fully set forth herein.

18

63. From approximately February 2010 to May 22, 2013, BICKERS served as the Director of Human Services for the City of Atlanta earning approximately $50,391 in 2010, $57,986 in 2011, $42,849 in 2012, and $28,046 in 2013, according to her tax returns.

64. The City of Atlanta's Code of Ethics § 2-814(a)(1), required BICKERS to disclose "[e]ach and every source of income from any business received by such official or employee in excess of $5,000 derived from any single source in the preceding calendar year."

65. BICKERS filed multiple false City of Atlanta Financial Disclosure Forms under penalty of perjury via the Internet.  From February 2010 to May 22, 2013, BICKERS received payments of more than $5,000 from sources other than the City of Atlanta that she failed to disclose and in violation of City of Atlanta code.  During this period, BICKERS continued to receive her City of Atlanta salary.

66. Between in or about  January 2010 and May 2013, in the Northern District of Georgia and elsewhere, defendant MITZI BICKERS, knowingly devised and participated in and attempted to devised and participate in a scheme to defraud and to obtain money and property from the City of Atlanta by means of a materially false and fraudulent pretense, representation, and promise, and by an omission of material fact, and in executing the scheme caused, on or about the dates listed below, the transmission in interstate commerce, by means of a wire communication, certain signs, signals, and sounds, that is – the electronic communications associated with the salary payments listed below:

| COUNT | DATE | RECIPIENT | DESCRIPTION |
|---|---|---|---|
| 6 | February 22, 2013 | BICKERS's Bank of America account ending in 5954 | City of Atlanta Salary Payment in the amount of $600.00 |
| 7 | February 22, 2013 | BICKERS's Credit Union of Atlanta account ending in 9145 | City of Atlanta Salary Payment in the amount of $829.64 |
| 8 | March 8, 2013 | BICKERS's Bank of America account ending in 5954 | City of Atlanta Salary Payment in the amount of $600.00 |
| 9 | March 8, 2013 | BICKERS's Credit Union of Atlanta account ending in 9145 | City of Atlanta Salary Payment in the amount of $809.28 |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## Count 10

*(Tampering with a Witness or Informant – 18 U.S.C. § 1512(b)(3))*

67. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 2 through 49, as if fully set forth herein.

68. From in or about May 2015 to on or about September 11, 2015, in the Northern District of Georgia, defendant MITZI BICKERS, aided and abetted by others, knowingly used and attempted to use intimidation, threats, and corrupt persuasion; and engaged in misleading conduct towards Elvin R. Mitchell, Jr., with the intent to hinder, delay, and prevent the communication to a United States law enforcement officer of information relating to the commission and possible commission of a federal offense; in violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

## Count 11

*(Filing False Tax Returns – 26 U.S.C. § 7206)*

69. The Grand Jury re-alleges and incorporates by reference the factual allegations from Paragraphs 2 through 49, as if fully set forth herein.

70. On or about April 20, 2012, in the Northern District of Georgia, defendant MITZI BICKERS, knowingly and willfully made and subscribed a 2011 United States Individual Income Tax Return (Form 1040) that was verified by a written declaration made under penalty of perjury, and filed with the Internal Revenue Service Center and which BICKERS did not believe to be true and correct as to every material matter, namely BICKERS stated that her total income for 2011 was $57,986 (on line 22), when she then and there knew that was not an accurate statement of her total income; in violation of Title 26, United States Code, Section 7206(1).

## Forfeiture Provision

71. Upon conviction of one or more of the offenses alleged in Counts 1, 2, 6, 7, 8, and 9 of this Indictment, defendant MITZI BICKERS, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of said violations, including but not limited to:

    a.  Real Property located at 3306 Bay View Drive, Jonesboro, Georgia;

    b.  2014 GMC Acadia Denali, bearing VIN 1GKKRTKD8EJ138259;

    c.  2014 Yamaha WaveRunner, model VX1800A-NB, US-YAMA3116J314;

    d.  2013 Yamaha WaveRunner, model SJ700, JP-YAMH0089E313;

e. 2013 Yamaha WaveRunner, model GX1800A, US-YAMA3940D313;

f. 2014 Yamaha WaveRunner, model FA 1800-N, US-YAMA1141L314;

g. 1964 Cadillac DeVille, bearing VIN 64F14244B; and

h. Money Judgment: a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses.

72. Upon conviction of one or more of the offenses alleged in Counts 3, 4, and 5 of this Indictment, defendant MITZI BICKERS, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(A), and Title 28, United States Code, Section 2461(c), any and all property, real or personal, involved in or traceable to said violation, including but not limited to:

a. 2014 GMC Acadia Denali, 1GKKRTKD8EJ138259;

b. 2014 Yamaha WaveRunner, model VX1800A-NB, US-YAMA3116J314;

c. 2013 Yamaha WaveRunner, model SJ700, JP-YAMH0089E313;

d. 2013 Yamaha WaveRunner, model GX1800A, US-YAMA3940D313;

e. 2014 Yamaha WaveRunner, model FA 1800-N, US-YAMA1141L314; and

f. Money Judgment: a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses.

73. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above; all pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(B), and Title 28, United States Code, Section 2461(c).

A _____ TRUE _____ BILL

_____
FOREPERSON

BYUNG J. PAK
  *United States Attorney*

KURT R. ERSKINE
  *Assistant United States Attorney*
Georgia Bar No. 249953

JEFFREY W. DAVIS
  *Assistant United States Attorney*
Georgia Bar No. 426418

23