IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT. |
| | : | NO. 1:18-CR-98-SCJ-LTW |
| v. | : | (First Superseding) |
| MITZI BICKERS, | : | |
| Defendant. | : | |

## MAGISTRATE JUDGE'S ORDER
## AND FINAL REPORT AND RECOMMENDATION
## AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is presently before the Court on Defendant Mitzi Bicker's
("Defendant") Motion for Bill of Particulars and Motion to Strike Surplusage (Doc.
53), Motion to Dismiss Counts (Doc. 54), and Motion for Early Disclosure of Jencks
Material and Early Identification of Government's Case-in-Chief Documents (Doc.
56).  The Government has filed a Response in Opposition to Defendant's motions.
(Docs. 63, 64, and 65).  For the reasons outlined below, Defendant's Motion for a Bill
of Particulars and her Motion for Early Disclosure of Jencks Material and Early
Identification of Government's Case-in-Chief Documents are **DENIED**.  (Docs. 53,
56).  This Court also **RECOMMENDS** that Defendant's Motion to Strike Surplusage

and her Motion to Dismiss Counts be **DENIED**.[1]  (Docs. 53, 54).

<u>**BACKGROUND**</u>

On October 22, 2018, a grand jury in the Northern District of Georgia returned a twelve-count Superseding Indictment ("Indictment") charging Defendant with two counts of conspiracy to commit bribery in violation of 18 U.S.C. § 371; bribery in violation of 18 U.S.C. § 666(a)(2); three counts of money laundering in violation of 18 U.S.C. § 1957 and Section 2; four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1349; tampering with a witness in violation of 18 U.S.C. § 1512(b)(3); and filing false tax returns in violation of 26 U.S.C. § 7206.  (Doc. 41).  The Indictment also includes a forfeiture provision, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c).  Notably, the Indictment is very detailed, it has 95 paragraphs, and it is twenty-six pages.  (Doc. 41).

In order to address Defendant's claim of entitlement to a bill of particulars and Defendant's motions to strike surplusage and to dismiss counts, the Court will provide some specific details about the Indictment's allegations.   Count One, paragraph 1, of the Indictment, charges that Defendant from around 2010 to at least

---

[1] Defendant's Motion for Full Disclosure of Proffer Information Pursuant to <u>Giglio</u> and <u>Brady</u> (Doc. 55) and the Government's Motion to Admit Business Records (Doc. 57) have been deferred to the District Court.  (<u>See</u> March 13, 2019 docket entry date).

about May 22, 2013:

> Knowingly and willfully conspired, agreed, and had a tacit understanding with Elvin R. Mitchell, Jr., Charles P. Richards, Jr. and others known and unknown to commit violations of the laws of the United States, that is - bribery involving a local government receiving federal funds, in that, [Defendant], an agent of the City of Atlanta, Georgia (a local government), corruptly solicited and demanded for her benefit and accepted and agreed to accept a thing of value from a person with the intent to be influenced and rewarded in connection with any business, transaction, and series of transactions of the City of Atlanta government, involving a thing of value of at least $5,000, in any one-year period where the City of Atlanta government received benefits in excess of $10,000 under a federal program, involving a grant, contract, subsidy, loan, guarantee, insurance and other form, in violation of Title 18, United States Code, Section 666(a)(1)(B).

 (Doc. 41).

Under the heading "Object of the Conspiracy," paragraph 2, of the Indictment alleges that the Defendant conspired to enrich herself and others by soliciting and accepting payments from Mitchell and Richards, in exchange for her agreement to represent their companies in obtaining lucrative City of Atlanta[2] contracts.  (Id.).  The Indictment also provides background information regarding Defendant, and Mitchell and Richards.  Specifically, paragraphs 3 through 10, of the Indictment provide background on the City; information on three companies associated with Defendant (the Bickers Group, Chateau Land Company, and Pirouette Companies);

---

[2] For ease of reference, the Court will refer to the City of Atlanta as "the City" or "City".

details regarding Defendant's employment from February 2010 to May 22, 2013, as the Director of Human Services for the City and her salary during this time frame; information about companies owned by Mitchell and Richards; and describes the types of government contracts that Mitchell and Richards' businesses were awarded by the City between 2010 and 2015 in the amount of approximately $17 million.  (Id.).

Under the heading "The City of Atlanta's Ethics and Procurement Codes," paragraphs 11 through 14, of the Indictment, reference certain sections of the City's Ethics Codes, while paragraphs 15 through 19 provide details about the City's Procurement Codes.  (Id.).  Specifically, paragraphs 11 through 14 present the purpose of the City's Ethics Code; explain that an official or employee's participation in contracts is prohibited; indicate that officials or employees are required to file statements disclosing any and all income and financial interests in excess of $5,000; and reveal that employees are forbidden from soliciting or accepting anything of value calculated to influence a vote, decision, or official authority involving the City. (Id.).  Paragraphs 15 through 19, of the Indictment, reference certain sections of the City's Procurement Code describing the responsibility of the Department of Procurement; detailing the requirements of the City's officers and employees to disclose to the chief procurement officer any direct or indirect interests in a procurement; explaining that it is unethical for any person to offer or give an

4

employee or former employee or for any employee or former employee to solicit or accept from another person gratuities, offers of employment, and kickbacks; providing that it is unethical for a person to retain a person to solicit or secure a City contract for a contingent fee; and indicating that it is unethical for any City employee or former employee to use confidential information for actual or anticipated personal gain or to do so on behalf of another person.  (Id.).

The Indictment further describes the "Manner and Means" of the conspiracy by alleging that Mitchell and Richards agreed to and did pay bribes to Defendant, while she was a City employee, to secure City contracts for their businesses.  (Id.).  In exchange for those payments, the Indictment alleges Defendant agreed to represent Mitchell and Richards and their companies on matters relating to the City's contracting, and that Defendant provided sensitive contracting information to Mitchell and Richards to assist them in submitting contract bids.  (Id.).  Paragraph 21 of the Indictment explains that in early 2013, Defendant's financial ties to the Pirouette Companies was exposed publicly resulting in Defendant amending her 2013 City Financial Disclosure Statement to reveal her relationship with the Pirouette Companies.  (Id.).  It is also noted that Defendant resigned from the City on or about May 22, 2013.  (Id.).

Additionally, the Indictment sets forth in paragraphs 22 through 51 a number

of "Overt Acts" allegedly committed by Defendant and her alleged co-conspirator/s

in furtherance of the conspiracy:

> Under the City's Ethics Code and as part of her employment, Defendant was required to disclose annually all positions of employment she held for any portion of the year with any business, including the existence and nature of any business done by the employer entity with the City;

> That in 2011, 2012, 2013, and 2014, Defendant completed, signed, and submitted via the Internet, City financial disclosure statements knowing that some of those disclosure statements (financial disclosure statements submitted in 2012, 2013 (original), and 2014), contained false and fraudulent answers and representations in that she represented that she had not been employed outside the City, she had not received more than $5,000 in annual income from any other company, or she had not been paid for appearing on behalf of any person, client, or private interest before any city agency;

> That between 2010 and 2015, Mitchell and Richards and their companies paid over $2 million in bribe payments to Defendant, the Bickers Group, Chateau Land Company, and the Pirouette Companies, in an attempt to get City contracts; and certain payments from Mitchell and Richards to Defendant and certain City contracts awarded to Mitchell and Richards, as well as certain purchases made by Defendant, are detailed.

(Id.).  Count Two, of the Indictment alleges Defendant conspired with others to

commit bribery, in violation of 18 U.S.C. § 371.  (Id.).  The "Object of the Conspiracy"

is described as, after Defendant left her employment with the City on or about May

22, 2013, she solicited and accepted bribe payments from Mitchell, Richards, and

their companies, in exchange for her agreement to represent their businesses to

obtain lucrative City contracts through the bribery of at least one public official.  (Id.).

6

Specifically, Count Two charges that from on or about May 22, 2013, to at least

sometime in 2015, Defendant:

> knowingly and willfully conspired, agreed, and had a tacit
> understanding with Elvin R. Mitchell, Jr., Charles P. Richards, Jr., and
> others known and unknown to commit violations of the laws of the
> United States, that is - bribery involving a local government receiving
> federal funds, in that Defendant corruptly gave, offered, and agreed to
> give a thing of value to a person with the intent to influence and reward
> an agent of the City (a local government), in connection with any
> business, transaction, and series of transactions of the City government,
> involving a thing of value of at least $5,000, in any one-year period
> where the City government received benefits in excess of $10,000 under
> a federal program involving, a grant, contract, subsidy, loan, guarantee,
> insurance and other form, in violation of Title 18, United States Code,
> Section 666(a)(2), all in violation of Title 18, United States Code, Section
> 371.

(Id.).  Count Three, of the Indictment charges Defendant with bribery by attempting

to obtain lucrative government contracts with the City of Jackson, Mississippi

("Jackson") through the provision of money, goods, and services to public officials

intending to influence and reward the public officials for exercising their official

duties in violation of 18 U.S.C. § 666 (a)(2). The Indictment provides detailed

background information explaining that a Special Mayoral Election was held in

Jackson in the spring of 2014; that Defendant assisted a candidate in that election who

was elected Mayor of Jackson  ("the Mayor") in April 2014; and that in March, April,

and July 2014, and in February 2015, Defendant, Mitchell, Richards, and "K.J."

allegedly wrote checks, from various personal and corporate accounts, to the Mayor's election committee.  (Id.).

The Indictment describes the "Bribery Scheme" as follows: beginning in March 2014, Defendant hosted parties and paid for things like food, flights, hotels, chauffeured car services, entertainment, fundraisers, and campaign services for the Mayor and other Jackson officials in an effort to influence and reward the public officials.  (Id.).  Mitchell is alleged to have been the funding source for many of those activities.  (Id.).  Similarly, paragraphs 63 through 73 detail certain specific payments allegedly made by Defendant for Jackson officials, actions taken by Defendant related to contracts and projects in Jackson, and representations Defendant made about getting a contract in Jackson.  (Id.).

Counts Four through Six, of the Indictment, charge Defendant with money laundering, in violation of 18 U.S.C. § 1957.  (Id.).  Paragraphs 77, 79, and 81 describe certain monetary payments allegedly from Mitchell to Defendant (approximately $85,700, $21,000, and $22,000, respectively); and paragraphs 78, 80, and 82 detail certain purchases allegedly made by Defendant around the same time periods for a 2014 GMC Acadia Denali and four Yamaha Waverunners.  (Id.).  Additionally, paragraph 83 alleges Defendant, aided and abetted by Mitchell and others, knowingly engaged in monetary transactions involving criminally-derived property

from the bribery scheme in Count 2 by purchasing the 2014 GMC Acadia Denali on

May 9, 2014 (Count Four); two Waverunners on May 23, 2014 (Count Five); and two

Waverunners on July 3, 2014 (Count Six).  (Id.).

Counts Seven through Ten, of the Indictment,    charge Defendant with wire

fraud, in violation of 18 U.S.C. §§ 1343 and 1349.  (Id.).  Similar to the previous counts

in the Indictment, certain factual allegations are re-alleged and incorporated, and

these counts relate to the Defendant's City Financial Disclosure forms described in

Count One.  Specifically, paragraphs 85 through 88 allege that Defendant, while

serving as the Director of Human Services for the City, filed multiple false City

Financial Disclosure forms via the internet; that from February 2010 to May 22, 2013,

Defendant received payments of more than $5,000 from sources other than the City

that she failed to disclose in violation of the City's Code of Ethics; and that at the

same time Defendant continued to receive her salary from the City. Thus, Defendant

is charged with knowingly devising and participating in a scheme to defraud and

obtain money from the City by means of a materially false and fraudulent pretense,

representation, promise, and by an omission of a material fact, and in executing the

scheme caused certain interstate wire communications, that is, electronic

communications associated with salary payments from the City made to Defendant

on February 22, 2013 (Counts Seven and Eight) and on March 8, 2013 (Counts Nine

and Ten).  (Id.).

In Count 11 of the Indictment, Defendant is charged with tampering with a witness or informant, in violation of 18 U.S.C. § 1512(b)(3) (Id.).  Paragraph 90 alleges that between May and September 11, 2015, Defendant aided and abetted by others, knowingly used and attempted to use intimidation, threats, and corrupt persuasion; and engaged in misleading conduct towards Mitchell, with the intent to hinder, delay, and prevent Mitchell from communicating with a law enforcement officer relating to the commission or possible commission of a federal offense.  Finally, in Count 12 of the Indictment, Defendant is charged with filing a false tax return in violation of 26 U.S.C. § 7206(1).   Specifically, paragraph 92 alleges Defendant knowingly and willfully made and filed a false federal tax return, in that she claimed a total income for 2011 of $57,986 when she knew that was not an accurate statement of her total income.  (Id.).

## DEFENDANT'S MOTION FOR BILL OF PARTICULARS AND TO STRIKE SURPLUSAGE FROM THE INDICTMENT

Defendant has filed a motion for a bill of particulars requesting that the Court direct the Government to provide additional information regarding Counts One, Two, Three, and Seven through Ten of the Indictment.  (Doc. 53).   Defendant also requests that the Court require the Government to strike surplusage in Counts One

and Three of the Indictment.

## I.   Defendant 's Motion for Bill of Particulars

### A.   Defendant's Requests

Defendant contends that the Government should be directed to file a bill of

particulars to provide additional information regarding Count One (Conspiracy),

Count Two (Conspiracy), and Counts Seven through Ten (Wire Fraud) of the

Indictment.  (Doc. 53).  First, Defendant seeks more information with regard to

several paragraphs in Count One as provided below:

> In Count 1, paragraph 1, the Indictment alleges [Defendant[ was an
> agent of the City of Atlanta, Georgia during the time-frame of "in or
> about 2010 until on or about May 22, 2013." During that time-frame, the
> indictment alleges that as an agent of the City, [Defendant] "corruptly
> solicited and demanded for her benefit and accepted and agreed to
> accept a thing of value from a person with the intent to be influenced
> and rewarded in connection with any business, transaction, and series
> of transactions of the City of Atlanta government. . . ."
>
> The second paragraph of Count 1 is then entitled "Object of the
> Conspiracy" and goes on to allege that [Defendant] solicited and
> accepted payments "from Mitchell and Richards and their companies in
> exchange for her agreement to represent their businesses and to obtain
> lucrative City of Atlanta contracts for their companies through bribery."
>
> In Count 1, under the heading of "overt acts" contained in paragraphs
> 22-29, the Indictment alleges that [Defendant] submitted inaccurate
> financial disclosure statements to the City of Atlanta for the years 2011-
> 2014.

(Doc. 53, at 1-2).  Defendant argues the Government should be required to provide

what information they used to conclude that she had any agency or scope of

authority for the City of Atlanta to influence or cause the award or reward of any City of Atlanta contracts outside of her position and/or scope of employment within the City in the Department of Human Services.

Based on paragraph 2 of Count One, Defendant also argues the Government should be required to provide information regarding in what way and to whom did she represent Mitchell and/or Richards' businesses in order to obtain City of Atlanta contracts.  In Defendant's third request, she seeks additional information based on Count 1 and Defendant's financial disclosures. Defendant contends that the Government should be required to specify how a statement made retrospectively can be made in furtherance of a conspiracy and how, in fact, these disclosures allegedly furthered any conspiracy.

Defendant also seeks additional information as to Count Two provided below:

> In Count 2, paragraph 53, the indictment alleges that following her retirement from the City of Atlanta, [Defendant] committed "the bribery of at least one public official." Further, in paragraph 54, the indictment alleges that [Defendant], "agreed to give a thing of value to a person with the intent to influence and reward . . ."

Defendant contends that the Government should be required to specify the individual involved that gives rise to federal jurisdiction in this count and what was the "thing of value" that was given as it also must pass muster to meet jurisdictional and legal requirements.

Defendant's final request for a bill of particulars is based on Counts Seven through Ten provided below:

> In Counts 7-10, the general allegation is that [Defendant] filed certain false financial disclosure forms with the City of Atlanta that caused the electronic transmission of her salary to be paid in violation of 18 U.S.C. § 1343 and 1349, wire fraud.

(Doc. 53).  Defendant argues the indictment is vague with respect to Counts Seven through Ten, therefore, the Government should be required to indicate how the filing of disclosure forms regarding finances gained from the previous year caused a wire transmission of Defendant's current salary to be paid to her account or how in any way those two actions are related.

### B.    The Government's Response

The Government argues in response that none of Defendant's requests are proper bill of particular disclosures.   (Doc. 63).   As a preliminary matter, the Government contends that to obtain a bill of particulars, Defendant must prove that the requested information is necessary, that she will be prejudiced without the information, and a mere statement that she will be prejudiced without the information is insufficient.  According to the Government, Defendant has failed to meet her burden.

Notwithstanding Defendant's failure to meet her initial burden, the

Government also contends that the Grand Jury returned a meticulous and comprehensive twenty-six-page Superseding Indictment that tracked the relevant statutory language and provided the essential elements of each of the charged offenses.  Therefore, the Government reasons that the Indictment, is sufficient as a matter of law because the Indictment informed Defendant of the charges against her with sufficient precision to allow her to prepare her defense, to minimize surprise at trial, and to enable her to plead double jeopardy in the event of a later prosecution for the same offense.  The Government further asserts that Defendant has been provided with extensive discovery materials, which further rebuts her need for a bill of particulars.   Specifically, the Government indicates that it has produced to Defendant: (a) bank records for various financial institutions (including those directly related to the charged conduct); (b) records and emails from the City of Atlanta; (c) investigative reports; (d) witness transcripts and recordings; (e) business records from various institutions; and (f) tax-related records and materials. Additionally, the Government asserts that it has made available for Defendant's review and inspection virtually every other case-related record in its possession (with the exception of limited <u>Jencks</u> Act materials).

Lastly, the Government argues Defendant is requesting information to which she is not entitled, and her requests are nothing more than an attempt to glean the

Government's theory of the case.   Therefore, to the extent that Defendant is requesting more specific information regarding the formation of the conspiracies or all of the overt acts the Government may prove at trial, the Government contends that she is not entitled to that information by seeking a bill of particulars.

### C.   Discussion

Federal Rule of Criminal Procedure (7)(c)(1) provides that an indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.   Federal Rule of Criminal Procedure (7)(f) authorizes the Court to direct the government to file a bill of particulars.   The grant or denial of a bill of particulars rests within the sound discretion of the trial court.   United States v. Draine, 811 F.2d 1419, 1421 (11th Cir. 1987); United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985).   The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars.   United States v. Barnes, 158 F.3d 662, 666 (2d Cir. 1998). A mere statement that the defendant will be prejudiced without the bill is insufficient.   See id.

The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in

the event of a later prosecution for the same offense." United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted).  "A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics in original).  Generalized discovery, however, is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill.  Id. at 1442; United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981).  Similarly, a bill of particulars is not a tool that allows defendants to obtain every fact that the Government may possess regarding a conspiracy.  See United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986), modified on other grounds, 801 F.2d 378 (11th Cir. 1986).

Furthermore, a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources." United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990); Rosenthal, 793 F.2d at 1227.  A bill of particulars may be obtained to clarify an indictment, as long as it does not seek to determine in advance the government's proof.  United States v. Johnson, 575 F.2d 1347, 1356 (5th Cir. 1978); United States v. Smith, 341 F. Supp. 687, 690 (N.D. Ga. 1972).  However, the fact that an indictment conforms to the simple form suggested by the Federal Rules of Criminal Procedure, or accurately tracks the statutory or

regulatory language, is no answer or defense to a motion for a bill of particulars, since Rule 7(f) presupposes a valid indictment or charge against the defendant.  See United States v. Carrier, 672 F.2d 300, 303 (2d Cir. 1982) ("A bill of particulars may not save an invalid indictment[.]").  Instead, it is proper for a defendant to be furnished with further information regarding the charge when it is necessary for preparation of his defense and even though the granting of the motion requires the supplying of information "which in other circumstances would not be required because evidentiary in nature."  United States v. Smith, 16 F.R.D. 372, 375 (W.D. Mo. 1954); Carrier, supra ("[A bill of particulars] may provide the defendant with the evidentiary details needed to establish his defense.").  Even if in providing those details in a bill of particulars, the government's evidence or theories are somehow disclosed, the bill of particulars might still be proper.  United States v. Thevis, 474 F. Supp. 117, 123 (N.D. Ga. 1979); Smith, 16 F.R.D. at 375; Wright, Federal Practice and Procedure Criminal 2d § 129.  Finally, opposition to a bill of particulars is not properly made out by a claim that the defendant "'knows what he did, and, therefore, has all the information necessary.'"  United States v. Moore, 57 F.R.D. 640, 643 (N.D. Ga. 1972) (quoting Smith, id.).

Here, Defendant argues the Government should be required to provide: (1) what information the Government used to conclude that Defendant had any agency

or authority with the City to influence or cause the award of contracts outside of her position and/or scope of employment; (2) in what way did Defendant represent Mitchell and Richards businesses to obtain City contracts; (3) how is it that Defendant's financial disclosure statement made retrospectively was made in furtherance of a conspiracy; (4) how did the filing of these financial disclosure statements further the conspiracy; and (5) how did filing false disclosure statements with the City cause the electronic transmission of her salary to be paid.

This Court finds that Defendant is not entitled to a bill of particulars for a number of reasons. First, the charging instrument in this case is very exhaustive and legally sufficient. Specifically, the Indictment sets forth the statutes involved in the charges against Defendant; it tracks the relevant language of those statutes; it provides relevant background information, including but not limited to: the manner and means, the actions taken by conspirators, numerous overt acts committed in furtherance of the conspiracy (the dates and alleged payments), the object of the conspiracy, the dates, financial institutions, monetary transactions, and individuals involved in the money laundering charges; and it details Defendant's alleged participation in a scheme to defraud and use interstate wires in furtherance of the

scheme sufficiently to support the charges provided therein.[3]  The foregoing amount of detail in the Indictment together with the voluminous discovery produced by the Government (i.e. bank records, financial statements, witness transcripts/recordings, business and tax related records), provide sufficient information about the nature of the charges to enable Defendant to prepare for trial, to avoid unfair surprise, and to enable her to plead double jeopardy in the event of a later prosecution for the same offense.  United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) ("An indictment need do little more than track the language of the statute charged to be sufficient.").

Second, as applied to the Conspiracy charges, "[a]n [I]ndictment for conspiracy to commit an offense is not required to be as specific as a substantive count and is constitutionally asserted if it sets forth the essential elements of the offense, identifies co-conspirators, the object of the conspiracy, the conspiracy timeframe, and the situs of the conspiracy."  United States v. Durrett, No. 1:10-cr-134-WSD, 2012 WL 243761, at *4 (N.D. Ga. Jan. 25, 2012), aff'd 524 F. App'x 492 (11th Cir. 2013) citing United States v. Bascaro, 742 F.2d 1335, 1348 (11th Cir. 1984), abrogated on other grounds, United States v. Lewis, 492 F.3d 1219 (11th Cir. 2007).

---

[3] Although there are Twelve Counts in the Indictment, the Court is only addressing the Counts referenced in Defendant's request for bill of particulars.

In light of this less exacting standard, Counts One and Two certainly passes constitutional muster in that they identify the statutes violated, reference the essential elements of the offense, provide facts about the objects of the conspiracy, provide the names of the alleged co-conspirators, indicate the time span of the conspiracy and its locale, and describe the general nature of the official acts that Defendant allegedly performed in furtherance of the conspiracy.  See United States v. Wayerski, 624 F.3d 1342, 1350 (11th Cir. 2010) (explaining that defendant was adequately informed of conspiracy charge against him where the indictment specifically referred to the statute upon which the charge was based, tracked the wording of the statute, named the co-conspirators, and alleged method, time and place of predicate violations.).

Furthermore, the Court concludes that Defendant's requests appear to seek details on the Government's theory of the case to which she is not entitled in a bill of particulars.  See United States v. Roberts, 174 F. App'x 475, 477 (11th Cir. 2006) (a bill of particulars "'is not designed to compel the government to detailed exposition of its evidence'") (citation omitted); United States v. Chaidez-Ontiveros, No. 1:11-cr-264-AT-JFK, 2011 WL 7574634, at *2-3 (N.D. Ga. Oct. 25, 2011) (denying motion for a bill of particulars where the defendant sought the government's theory of the case and evidentiary detail, where the government "provided . . . a wealth of information

in discovery" and the indictment fully apprised the defendant of the charges); <u>United States v. Scrushy</u>, No. CR-03-BE-530-S, 2004 WL 483264, at *9 n. 5 (N.D. Ala. Mar. 3, 2004) ("[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge.  The function of the bill of particulars is to reduce surprise at the *charge,* that is, to enable the defendant to identify what he is alleged to have done in violation of law.  It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.") (emphasis in original).

Finally, Defendant seeks to have the Government identify persons referenced but not specifically named in Count One and Two of the Indictment and information regarding the "thing of value" referenced in Count Two.  Specifically, Defendant requests that the Government identify "to whom Defendant represented Mitchell and/or Richards' businesses in order to obtain City contracts?"  Defendant also requests that the Government be required to identify the public official who Defendant allegedly bribed that gives rise to federal jurisdiction; and to provide more information as to what was the "thing of value" that was allegedly given to a person with the intent to influence and reward . . ."  (Doc. 53).

Requests to know the "whens," "wheres," and "with whoms" of acts in conspiracy are routinely denied.  <u>See</u> <u>United States v. Henry</u>, 861 F. Supp. 1190, 1197

(S.D. N.Y. 1994).  In response, however, the Government points to Counts One and Two of the Indictment which identify Mitchell and Richards as co-conspirators and indicate that there are others known and unknown involved in the conspiracy.  The Government, acknowledging its obligation under the Court's pretrial scheduling order to identify co-conspirators, contends that it has identified to defense counsel at least one unindicted person it considers to be a co-conspirator in Counts One and Two, and that it will continue to notify defense counsel as necessary.  To the extent that Defendant is seeking the names of unindicted co-conspirators referenced in Counts One and Two, based on the Government's representation that it has already identified at least one unindicted co-conspirator and will continue to provide to defense counsel the names of additional unindicted co-conspirators as necessary, Defendant's request is **DENIED AS MOOT**.

Thus, this Court finds that the Government has informed Defendant of the charges against her with sufficient precision to prepare her defense, minimize surprise at trial, and plead double jeopardy in the event of a later prosecution for the same offense, has provided voluminous discovery containing information about the nature of the charges against Defendant, and has identified co-conspirators and acknowledged its obligation under the Court's pretrial scheduling order to continue to identify co-conspirators.  Based on the foregoing reasons, and because Defendant's

requests essentially seek details on the Government's theory of the case, Defendant's Motion for Bill of Particulars is **DENIED**.[4]  (Doc. 53).

## II.    Motion to Strike Surplusage

Defendant also requests that the Court require the Government to strike as surplusage certain paragraphs in Counts One and Three of the Indictment. Specifically, in Count One, paragraphs 11-19, Defendant seeks to strike paragraphs and sections of the City's Ethics and Procurement Codes because (1) the paragraphs and sections do not contain any criminal allegations, (2) the particular sections will be confusing and misleading to a jury, and (3) these sections of the City's Ethics and Procurement Codes are not supported by the evidence and are, therefore, irrelevant or unjustly prejudicial.  (Doc. 53).

Defendant also seeks to strike portions of Count Three, paragraph 61, of the Indictment alleging that "in or about February 2015, Defendant, Mitchell, Richards and K.J. all wrote checks made payable to the Mayor's election committee."  (Doc. 53 at 4).  Defendant contends that the indictment does not allege that these contributions

---

[4] Defendant requests, in the alternative to the bill of particulars, that if the Government is unable to provide specific information in accordance with any or all of the above requests, that the item(s) or paragraph(s) for which the Government is unable to provide such information be stricken, in part or in whole, from the indictment.  For the reasons previously provided, Defendant's alternative request is **DENIED**.

were done in violation of any campaign finance laws or were otherwise criminal or even inappropriate.  Defendant further argues this language infers that this action was somehow illegal and would prejudice and confuse a jury against her.  Defendant further contends that it is well established that campaign finance contributions are protected political speech under the First Amendment to the United States Constitution.

Finally, Defendant seeks to strike paragraph 62 which alleges Defendant "hosted parties and paid for food, airline flights, hotels, chauffeured car services, entertainment, fundraisers and campaign services for the Mayor and other City of Jackson officials. . ."  and . . .  "Mitchell helped to fund many of these activities." (Doc. 53). Defendant asserts that the numbered paragraphs that follow under this count, however, only detail a couple of chauffeured car rides and some airline tickets, without providing any specifics related to any of the other allegations.  Defendant argues the other references in paragraph 62 appear to be campaign-related that fall under protected First Amendment speech.  Therefore, Defendant contends that these broad statements without any particulars should be stricken as surplusage from the indictment.  In response, the Government contends that the Indictment contains no irrelevant, inflammatory, or unfairly prejudicial language, and Defendant's Motion to Strike should be denied.

Federal Rule of Criminal Procedure 7(d) grants the Court the authority to strike surplusage from an indictment upon a motion by the defendant.  Fed.R.Crim.P. 7(d).  "It is important to note that Rule 7(d) is strictly construed against striking surplusage."  United States v. Williams, No. 07-80179-CR, 2008 WL 4867748, at *3 (S.D. Fla. Nov. 10, 2008).  As a result, a defendant's motion must be denied "'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most exacting standard.'"  United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (quoting United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990).  Consistent with this "most exacting standard," "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language."  Id. (citing United States v. Fahey, 769 F.2d 829, 842 (1st Cir. 1985)).

In this action, the Court finds that all of the objected-to paragraphs are plainly relevant to the charges, and that Defendant has failed to show, beyond conclusory statements, how the language of the Indictment is inflammatory or prejudicial, an essential element of a motion to strike surplusage.  As to Defendant's argument that the City's Ethics and Procurement Codes in Count One, paragraphs 11-19, are mere recitations and are not connected to other allegations or counts in the Indictment, that they will be confusing/misleading to a jury that would interpret these sections

as criminal violations, and would unjustly prejudice Defendant because they will be misleading and confusing to a jury, this Court disagrees.   As noted by the Government, these Code Sections are relevant because they go directly to proving Defendant's state of mind and scienter in the City's conspiracies; these Code sections appear to have imposed a duty on Defendant, as a high-ranking employee in the City; that City employees like Defendant were repeatedly advised of their obligations to avoid and, if necessary, disclose financial conflicts of interest like those presented in this case; and that Defendant's repeated false representations submitted in connection with her City Financial Disclosure forms show that Defendant knew she had something to hide from public view.   Based on the Government's representations, this Court finds that the City's Ethics and Procurement Codes  are relevant, that they appropriately help place Defendant's alleged activities in context, they explain what is required of certain City employees such as Defendant who are required to file financial disclosures as well as conduct that is prohibited, and they say nothing inflammatory or prejudicial. Accordingly, Defendant's motion to strike paragraphs 11-19, in Count One should be denied.

Similarly, Defendant's request to strike the language in Count 3, paragraph 61, regarding Defendant and others writing checks to the Mayor of Jackson's election committee, and in language in paragraph 62, alleging Defendant hosted parties and

paid for other activities and campaign services for the Mayor of Jackson and other Jackson officials should also be denied. Defendant contends that including language in the Indictment about campaign contributions and other campaign-related activities infers that she engaged in illegal activities or indicates some sort of criminal action which would be in violation of her rights under the First Amendment because campaign finance contributions are protected political speech. This Court disagrees. While Defendant is correct in that the right to participate in democracy through political contributions is protected by the First Amendment, that right is not absolute. McCutcheon v. FEC, 572 U.S. 185, 187 (2014). Congress may regulate campaign contributions to protect against corruption or the appearance of corruption. See, e.g., Buckley v. Valeo, 424 U.S. 1, 26-27 (1976). The Constitution does not protect an attempt to influence a public official's acts through improper means, such as the bribery scheme that has been alleged in this case. See McDonnell v. United States, --- U.S. ----, 136 S. Ct. 2355 (2016); see also United States v. Menendez, 132 F. Supp. 3d 635 (D. N.J. 2015) (First Amendment does not prevent prosecution of alleged conspiracy to commit bribery in which things of value were exchanged for official acts.).

Here, the Government contends that the campaign donations relate directly to the bribery conspiracy charge itself, and if the Government can show that the

donations were given in the hope of buying something in return, this information is indeed relevant.   Furthermore, the Government argues the specific examples of Defendant's conduct in hosting parties and paying food and other activities for the Mayor of Jackson and other Jackson officials is relevant to the bribery scheme, and part of what the Government must prove at trial.   Because Defendant's conduct in paragraphs 61 and 62 is relevant, Defendant's motion to strike paragraphs 61and 62 in Count Three should be denied.  See Awan, 966 F.2d at 1426; United States v. Brye, 318 F. App'x 878, 880 (11th Cir. 2009); United States v. Smallwood, No. 3:09-cr-249-D(07), 2011 WL 2784434, at *10 (N.D. Tex. July 15, 2011) ("the court will not strike allegations that are *relevant,* no matter how prejudicial or inflammatory they may be to the defendant") (emphasis in original).

Based on the forgoing, this Court finds that the specific language in the Indictment that Defendant alleges is surplus contains factual allegations relevant and material to the charged offenses.   Because Defendant did not prove both that the challenged allegations are not relevant as well as being inflammatory and prejudicial, this Court **RECOMMENDS** that Defendant's Motion to Strike Surplusage be **DENIED** and that any reconsideration of the motion occur after introduction of the Government's evidence at trial.  (Doc. 53).  See United States v. Kelley, No. 08-00327-CG, 2009 WL 2176347, at *2 (S.D. Ala. July 17, 2009) ("After the court has heard all

28

the evidence, the defendants may make a motion to reconsider this ruling as to specific surplus language that they contend is unfairly prejudicial and inflammatory").

## MOTION TO DISMISS COUNTS

Defendant argues pursuant to Fed. R. Crim. P. 12(b)(3)(B) that Counts Seven through Ten of the Indictment should be dismissed because these counts are facially deficient as they fail to allege that Defendant received a monetary benefit from the City of Atlanta due to her alleged false financial disclosure forms, and only allege that she continued to receive her regular salary related to her employment. The Government argues in response that the Indictment tracks the language of the wire fraud statute; that the wire fraud counts they have been properly pled because the wire fraud counts specifically refer to the wire fraud statute; that a pretrial challenge to these counts is premature; and that the Defendant's arguments are really issues for the jury or the Court at a Rule 29 hearing.

## I.    Legal Standard

"It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused." United States v. McNair, 605 F.3d 1152, 1186 (11th Cir. 2010). An indictment is legally sufficient if it "'(1) presents the essential elements of the

charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" United States v. Masino, 869 F.3d 1301, 1306 (11th Cir. 2017) (quoting United States v. Lang, 732 F.3d 1246, 1247 (11th Cir. 2013)).  On a motion to dismiss, the Court is limited "to reviewing the face of the indictment and, more specifically, the language used to charge the crimes"; the Court "may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (alteration in original) (quotation omitted).

## II.   **The Indictment**

In Counts Seven through Ten of the Indictment, Defendant is charged with wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 in connection with the alleged filing of false Financial Disclosure Forms via the Internet while receiving her City salary as the Director of Human Services.  (Doc. 41).  Paragraph 87 of the Indictment alleges Defendant, from February 2010 to May 22, 2013, received payments of more than $5,000 from sources other than the City that she failed to disclose in violation of the City's code, and that during this period, Defendant continued to receive her City salary.  (Doc. 41 at 22).  Paragraph 88 alleges Defendant devised and participated in and attempted to devise and participate in a scheme to defraud and obtain money

from the City by means of a materially false and fraudulent pretense, representation, promise, and by an omission of a material fact, and in executing the scheme, caused certain interstate wire communications, that is, electronic communications associated with two salary payments from the City to Defendant's bank account on February 22, 2013 (Counts Seven and Eight), and two payments on March 8, 2013 (Counts Nine and Ten).  (Doc. 41, at 22-23).  Additionally, the Indictment incorporates the factual allegations from Paragraphs 2 through 51 which relate to the alleged filing of false City Financial Disclosures and Defendant's receipt of bribe payments.  (Id. ¶ 84).

## III.   **The Indictment Sufficiently Alleges Wire Fraud**

The Indictment tracks the language of the wire fraud statute.  Paragraph 88 of the Indictment is drafted in substantially the same language as the wire fraud statute. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1343.  Paragraph 88 of the Indictment provides:

> Between in or about January 2010 and May 2013, in the Northern District of Georgia and elsewhere, Defendant], knowingly devised and participated in and attempted to devise and participate in a scheme to

> defraud and to obtain money and property from the City of Atlanta by means of a materially false and fraudulent pretense, representation, and promise, and by an omission of material fact, and in executing the scheme, on or about the dates listed below, caused the transmission in interstate commerce, by means of a wire communication, certain signs, signals, and sounds, that is - the electronic communications associated with the salary payments listed below. . . [a]ll in violation of Title 18, United States Code, Section 1343 and 1349.

(Doc. 41, ¶ 88).   The following phrases from the Indictment are pulled from the statute: "scheme to defraud"; "to obtain money and property"; "false and fraudulent pretense, representation, and promise"; "caused the transmission in interstate commerce"; "by means of a wire communication"; and "certain signs, signals, and sounds."   <u>Compare</u> (Doc. 41, at ¶ 88) <u>with</u> 18 U.S.C. § 1343.

In addition to tracking the language of the statute, Counts Seven through Ten provide the dates (February 22, 2013, and March 8, 2013) of the alleged offense (the electronic communications associated with Defendant's salary payments), and the recipient of the electronic transmissions (Defendant's Bank of America account).   As such, the Indictment presents the essential elements of the charged offense, apprises Defendant of the charge against her, and provides sufficient notice to enable Defendant to rely upon a judgment under the Indictment as a bar against double jeopardy in any subsequent prosecution.

Defendant argues the wire fraud counts should be dismissed because this

section of the Indictment is devoid of any allegation that the allegedly false financial disclosure forms caused the payment of her regular salary. (Doc. 54). In response, the Government maintains that Defendant submitted multiple false financial disclosure statements under penalty of perjury and in direct violation of the City's Ethics Code, while receiving salary payments for the very same years covered by those statements. (Doc. 64). The Government explains that, having submitted the false financial disclosure statements, Defendant failed to correct the misimpression that she was conflict free, as was her duty under the City's Ethics and Procurement Codes. In support, the Government relies on United States v. Turner, 551 F.3d 657 (7th Cir. 2008) (concluding that, even though the direct deposits were a routine part of the janitor's employment, that did not make the use of the wires insufficient; noting that "even 'routine or innocent' mailings and wire transfers can form the basis of a mail- or wire-fraud conviction if they are part of the execution of the scheme); United States v. Waymer, 55 F.3d 564, 572 (11th Cir. 1995) (upholding mail fraud convictions and noting materiality of undisclosed information because fraud may be proved through non-disclosure of material facts intended to create a false and fraudulent representation and noting defendant's obvious fiduciary duty to the citizens to disclose the fact that he was receiving a 15% cut from companies doing business with the school board); and United States v. Morales, 664 F. App'x 228 (3d

Cir. 2016) (upholding wire fraud convictions based on defendant holding two full-time positions simultaneously and collecting twice for the same forty-hour work week).

Analogizing the facts in <u>Turner</u> to the instant action, the Government contends that had Defendant not falsified her financial disclosure statements—and instead disclosed the thousands of dollars in bribes from Mitchell and Richards who were collecting on lucrative contracts with the City of Atlanta at the time—she would have been terminated immediately and no longer have collected her City salary until she resigned in 2013. In Defendant's reply brief, Defendant argues there is no affirmative statement in the Indictment that a failure to comply with the City's ethical disclosure requirements could form the basis of a termination of employment or any other adverse employment action. (Doc. 66). According to the Defendant, the failure of the Government to include any such language in the Indictment subjects the wire fraud counts to immediate dismissal on this basis alone. (<u>Id.</u>). The Government responds that Defendant overlooks a commonsense reading of the Indictment.

While recognizing that salary payments can form the basis of a wire or mail fraud theory, Defendant also argues the salary theory has been explicitly rejected in multiple circuits where there was no nexus between the fraudulent scheme and the monetary benefit. In support, the Defendant relies on <u>United States v. Collier</u>, No.

34

5:08-cr-40(HL), 2009 WL 88383 (M.D. Ga. Jan. 12, 2009) ("[S]aying, as the indictment does, that [the defendant] retained his salary while engaging in such dishonest conduct is the same as saying that [the defendant] made decisions based on interests other than those of the public. . . . Despite the use of the word 'money' in reference to [the defendant] maintaining his salary, the allegations are nothing more than allegations of intangible acts of defrauding the public of honest services."); United States v. Ratcliff, 488 F.3d 639, 644, 646 (5th Cir. 2007) (rejecting salary theory in the context of a defendant who obtained public position through election fraud, *but* stating that, "We do not dispute the Government's contention that a salary and other financial employment benefits can constitute 'money or property' under the statute"); and United States v. Thompson, 484 F.3d 877, 884 (7th Cir. 2007) (holding defendant's raise approved through "normal personnel practices" was not a "private benefit," within the meaning of the mail fraud statute.).

This Court finds that the cases relied on by both parties are somewhat persuasive and fairly debatable on the issues of wire fraud and the "salary theory." Having read and considered those cases, however, the undersigned is unable to conclude that Counts Seven through Ten of the Indictment should be dismissed. Here, the Defendant is in essence, arguing that the Indictment is insufficient because it does not contain sufficient factual allegations to satisfy the elements of the offenses

charged, in particular, by failing to allege that Defendant received a monetary benefit due to any material omission or misrepresentations by her in connection with the fraudulent wire scheme.   Conversely, the Government contends that the factual allegations provided in the Indictment are sufficient and that the wire fraud counts have been properly pled.

This Court does not perceive these disputed matters as issues to be properly resolved on a pretrial motion, but, rather, as matters of the sufficiency of the evidence to be taken up at trial before the jury or on a Rule 29 motion[5] at the close of the evidence.  "There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. The sufficiency of a criminal indictment is determined from its face.  The indictment is sufficient if it charges the language in the statute."  United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004).  In this case the charges are sufficiently pleaded, and what Defendant is asking for is dismissal based upon the insufficiency of the evidence, which may not be granted at this stage.  "[T]here is currently no authority within the Federal Rules of Criminal Procedure for granting a motion to dismiss predicated on the insufficiency of the evidence, whether it be based in fact or law."  United States

---

[5] Under Federal Rule of Criminal Procedure 29, a defendant's motion for judgment of acquittal should be granted if the Court finds that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

v. Parker, No. 1:05-CR-45-ODE, 2006 WL 8443230, at *3 (N.D. Ga. Oct. 6, 2006), report and recommendation adopted, No. 1:05-CR-045-ODE, 2007 WL 9734884, at*1 (N.D. Ga. Apr. 13, 2007); see also United States v. Baxter, 579 F.App'x 703, 705 (11th Cir. 2014) ("A district court may not dismiss an indictment based on a determination of facts that should have been developed at trial."); also United States v. Mayfield, No. CR 17-241, 2019 WL 485959, at *4 (E.D. La. Feb. 7, 2019) (denying motion to dismiss wire fraud counts based on salary payments and distinguishing Mayfield from Ratcliff because the salary payments were related to the fraud).   In light of the foregoing, the Court concludes that the Indictment sufficiently alleges wire fraud, and as such, Defendant's Motion to Dismiss should be **DENIED**.  (Doc. 54).

### MOTION FOR EARLY DISCLOSURE OF *JENCKS* MATERIAL AND THE EARLY IDENTIFICATION OF THE GOVERNMENT'S CASE-IN-CHIEF DOCUMENTS

Defendant requests the early disclosure of Jencks materials, the early identification of the Government's case-in-chief documents, and requests that the Court order the Government to provide a witness list and an exhibit list at the earliest possible time, no later than sixty (60) days prior to trial.  In support, Defendant contends that the Government produced a substantial amount of discovery including two hard drives and several additional discs containing more than two million pages. Defendant also asserts that the Government has indicated that a substantial amount

of this discovery is unrelated to the Defendant.

## I.     Request for Early Disclosure of Jencks Act Material

Defendant contends that ordering early disclosure of Jencks Act materials will prevent a substantial delay in the trial of this case and will promote fairness to her as well as judicial efficiency.  (Doc. 56, at 2).   The Government responds in opposition by arguing the Court is without authority to order the Government to comply with a disclosure timetable beyond the one specified in the Jencks Act itself.  (Doc. 65).

The Jencks Act, 18 U.S.C. § 3500, requires the government to provide a defendant with statements of witnesses immediately following their testimony in court.  However, there is no authority for the Court to grant an early release or disclosure of that material.  United States v. Schier, 438 F.3d 1104, 1112 (11th Cir. 2006); United States v. Jordan, 316 F.3d 1215, 1251 & n. 78 (11th Cir. 2003); United States v. Jimenez, 613 F.2d 1373, 1378 (5th Cir. 1980).  Additionally, the Court's April 13, 2018 pretrial scheduling order addresses this issue by strongly encouraging the Government to disclose Jencks Act material before the pretrial hearing or the trial at which the witness will be called to testify.  (Doc. 15, at 9).  Furthermore, at a pretrial hearing held in on March 13, 2019, the Government indicated, and Defendant does not dispute, that (1) it intends to comply with the Court's Pretrial Order and that it had already produced a large amount of Jencks materials in discovery; (2) it fully

intends to produce any remaining <u>Jencks</u> materials just before trial; and (3) it intends to produce an exhibit list to defense counsel shortly in advance of trial.  In light of the Government's extensive advance disclosure of <u>Jencks</u> materials in discovery, this Circuit's case law, and because the Court's April 13, 2018 pretrial scheduling order already sets forth the timetable for the disclosure of <u>Jencks</u> Act material, Defendant's Motion for Early Disclosure of Jencks Material is deemed **MOOT**.  <u>See United States v. Reynolds</u>, No. CR 107-005, 2007 WL 1430306, at *3 (S.D. Ga. May 10, 2007) (denying as moot motion requesting disclosures under <u>Fed. R. Evid. 404(b)</u> where arraignment order already directed government to make those disclosures).

## II.   <u>Request for Government's Case-in-Chief Documents</u>

Defendant also requests, based on the voluminous discovery provided, that the Government be ordered to provide an exhibit list and specifically identify the documents it intends to use in its case-in-chief at the earliest possible time, no later than sixty days prior to trial.  (Doc. 56).  While conceding that the discovery in this case is voluminous, the Government contends that it has taken considerable steps to assist the defense in its review of these materials.  (Doc. 65).

Rule 16(a) of the Federal Rules of Criminal Procedure governs the government's discovery obligations. In particular, Rule 16(a)(1)(E) covers the production of "documents and objects" and provides as follows:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> >
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii) the item was obtained from or belongs to the defendant.

(Id.). Defendant's argument is premised on voluminous discovery that exceeds two million pages in a case involving a single defendant, and that a substantial amount of this discovery is unrelated to Defendant and was provided by the Government out of an abundance of caution. Defendant contends that the Government cannot seek to benefit by "overproviding" discovery in fulfilling its duty to disclose. (Doc. 56, at 2). The Government refutes Defendant's contention arguing that it has not simply dumped voluminous and disorganized discovery on defense counsel. Instead, the Government asserts that it has provided Defendant with a detailed index of the individual items produced in discovery, including a description of the materials, their source, and Bates range for reference. (Doc. 65, at 8). In addition, the Government points out that it has taken great pains to organize the discovery and provide a detailed roadmap for its review; has provided its computer program to Defendant so that the documents could be reviewed and searched electronically; has

provided access to litigation support specialists to answer questions and "troubleshoot" any problems; and has periodically met with defense counsel to see if they have encountered problems in reviewing the discovery materials and to answer any questions. (Id.).

The undersigned declines to order the Government to identify the documents it intends to use in its case- in- chief.  The language of Rule 16(a)(1)(E) does not *require* the Government to make specific identification of its case-in-chief documents separately from the other two categories of documents required to be produced. The rule only requires the production of the documents responsive to each of the categories. The text of Rule 16(a)(1)(E), therefore, does not provide persuasive authority for Defendant's position.  See United States v. Carranza, No. 1:05-CR-197-4-TWT, 2007 WL 2422033, *3 (N.D. Ga. Aug. 21, 2007); United States v. Scrushy, No. CR-03-BE-530-S, 2004 WL 483264, *3 (N.D. Ala. March 3, 2004) (plain language of Rule 16(a)(1)(E)(ii) does not require government to specify which documents it intends to rely upon at trial); United States v. Carrington, No.  02 CR897 (LTS), 2002 WL 31496199, *2 (S.D.N.Y. Nov. 7, 2002) (same).  Accordingly, Defendant's request for the Government to specifically identify its case-in-chief documents is denied.

## III.   Request for Government's Witness List

Finally, Defendant requests that the Court order the Government to provide a

witness list no later than sixty days prior to trial.  The Government argues in response that Defendant is not entitled to such a disclosure, she cites no authority that would compel the Court to order this production, her motion is not at all particularized to the facts of this case[6], and she makes no specific showing that she is entitled to the Government's list of witnesses.

It is well-settled, however, that a criminal defendant has no constitutional right to witness lists or witness statements before trial.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); see also United States v. Johnson, 713 F.2d 654, 659 (11th Cir. 1983) ("A criminal defendant has no absolute right to a list of the government's witnesses in advance of the trial.").  Nor does Fed. R. Crim. P. 16 require the disclosure of the identities of government witnesses.  See United States v. Aiken, 76 F. Supp. 2d 1339, 1343 (S.D. Fla. 1999) ("Under [Rule 16], there is no authority requiring the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is

---

[6] The Court's April 13, 2018 pretrial scheduling order provides that "[n]o party is required to provide a list of its other [non-expert] witnesses in advance of trial unless otherwise compelled by law.  The Court will entertain a motion for a witness list only if it is particularized to the facts of this case.  (Doc. 15, at 10).

required sooner by <u>Brady</u> or <u>Giglio</u>.").

The Court nonetheless has discretion to require the production of witness lists in advance of trial.  See <u>United States v. Elder</u>, No. 1:10-CR-132-RWS-AJB, 2010 WL 5656687, at *6 (N.D. Ga. Dec. 16, 2010), <u>report and recommendation adopted in relevant part</u>, 2011 WL 294507 (N.D. Ga. Jan. 27, 2011).  "To obtain a witness list, a defendant must show that the 'list would be material to the preparation of the defense.'"  <u>Id.</u> (quoting <u>Downing v. United States</u>, 348 F.2d 594, 599 (5th Cir. 1965)). Here, Defendant has not alleged that a witness list or any particular witness is material to her defense.  Furthermore, the Government asserts that many trial witnesses will be individuals with whom Defendant at one time had significant business and financial dealings.  Moreover, the Government contends that Defendant now has access to the documents, existing investigative reports and case materials from which she should know who may be called as a witness and what evidence may be elicited at trial.  Where, as here, many of the Government's witnesses are individuals with whom the defendant has had significant personal or financial relations, early disclosure of disclosure of the list will not materially aid her defense.  See <u>United States v. Colson</u>, 662 F.2d 1389, 1392 (11th Cir. 1981).  Based on the foregoing, Defendant's Motion for Early Disclosure of <u>Jencks</u> Merial and the Early Identification of Government's Case-in-Chief Documents is **DENIED**.  (Doc. 65).

## CONCLUSION

Based on the foregoing reasons, Defendant's Motion for a Bill of Particulars and Motion for Early Disclosure of Jencks Material and Early Identification of Government's Case-in-Chief Documents are **DENIED**.  (Docs. 53, 56).  This Court also **RECOMMENDS** that Defendant's Motion to Strike Surplusage and her Motion to Dismiss Counts be **DENIED** and that any reconsideration of these motions occur after introduction of the Government's evidence at trial.  (Docs. 53, 54).  As there are no further motions pending, the undersigned certifies this case ready for trial.  The Clerk is directed to terminate the reference to the undersigned.

**SO ORDERED AND REPORTED AND RECOMMENDED** this  17  day of September, 2019.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE