IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>MITZI BICKERS | Criminal Action No.<br><br>1:18-CR-98-SCJ-LTW |

### UNITED STATES' MOTION TO EXCLUDE
### INADMISSIBLE CHARACTER EVIDENCE

The United States of America, by Byung J. Pak, United States Attorney, and Kurt R. Erskine and Jeffrey W. Davis, Assistant United States Attorneys for the Northern District of Georgia, files this Motion in Limine, asking the Court to exclude potential evidence that the Defendant Bickers generally has good character, or evidence of specific instances of good character that are unrelated to the charges in this case. Such evidence is inadmissible under the Federal Rules of Evidence.

### Factual and Procedural Background

On October 22, 2018, a federal grand jury sitting in the Northern District of Georgia returned a superseding indictment against Defendant Mitzi Bickers, charging her with : (1) conspiracy to commit bribery, in violation of 18 U.S.C. § 371 (Counts One and Two); (2) bribery, in violation of 18 U.S.C. § 666(a)(2) (Count Three); (3) money laundering, in violation of 18 U.S.C. § 1957 (Counts Four, Five, and Six); (4) wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349 (Counts Seven, Eight, Nine, and 10); (5) tampering with a witness or informant, in violation of 18

1

U.S.C. § 1512(b)(3) (Count 11); and (6) filing false tax returns, in violation of 26 U.S.C. § 7206 (Count 12). [Doc. 41].

At one time, Bickers was a prominent public figure in Atlanta. Her father, Reverend Benjamin Weldon Bickers, founded the Emanuel Baptist Church. Bickers eventually assumed the role of pastor at the church after her father passed away in 1998. While under federal indictment in this case, she was named chief chaplain of the Clayton County Sheriff's Office.

More distantly, Bickers was the President of the Atlanta School Board and, in 2003, ran unsuccessfully for chair of the Fulton County Commission. In 2009, Bickers assisted in the mayoral campaign of former Atlanta Mayor Kasim Reed and is credited, in part, with his win based on her efforts in rallying voters and assisting them to the polls. After the election, Mayor Reed appointed Bickers to his staff as the Director of Human Services – a position she held until May 2013, shortly after it was discovered that she had lied on her City of Atlanta Financial Disclosures. During this time, the first bribery scheme involving Elvin R. Mitchell and Charles Richards began.

The charged acts fall within three time periods: (1) from 2010 to 2013, when Bickers was employed by the City of Atlanta as its Director of Human Services; (2) from 2013 to 2014, after Bickers left employment with the City of Atlanta and resumed her political consulting work; and (3) from 2014 to 2015, a separate bribery scheme involving multi-million dollar government contracts in Jackson, Mississippi, which culminated with a cinder block being thrown through the front window of Elvin R. Mitchell's home after Bickers and her co-conspirators discovered she was under federal investigation and Mitchell was cooperating.

### 1. Employment with the City of Atlanta

During her employment with the City of Atlanta from 2010 to May 22, 2013, Bickers conspired with E. R. Mitchell, C. P. Richards, and others in an elaborate "pay-to-play" scheme. Mitchell and Richards were owners of construction companies who sought and received government contracts with the City of Atlanta. For a cut of various city contracts, Bickers agreed to take bribe payments from Mitchell and Richards to City of Atlanta officials who would steer lucrative city contracts to their companies. Bickers did so first as the Director of Human Services and later after she left the city in 2013. Colloquially, Bickers, Mitchell and Richards referred to these funds as "up-front" money. Mitchell and Richards now have both been sentenced after pleading guilty to charges arising from this conduct. *See United States v. Mitchell*, 1:17-CR-15-SCJ; *United States v. Richards*, 1:17-CR-30-SCJ. They have both identified Bickers as the person to whom they paid bribes both while she was a city employee and afterwards.

While employed at the City of Atlanta, Bickers was required by the City's Ethics Code to complete under penalty of perjury a financial disclosure statement each year. In every disclosure filed, she intentionally failed to disclose that she and companies under her control received hundreds of thousands of dollars from Mitchell and Richards from 2010 to 2013 while she was employed by the City of Atlanta. This included an extra "amended" disclosure in 2013, submitted after she was exposed in the local media for filing false disclosures. But not for her deceptions and fraud, Bickers would have been fired by the City of Atlanta and would not have received her salary as a City employee as well as her direct access to public officials.

Similarly, Bickers failed to disclose her portion of the bribery proceeds as income to the Internal Revenue Service. On April 20, 2012, under penalty of perjury, she signed her 2011 IRS 1040 income statement, stating that her total 2011 income was $57,986 and was exclusively from her employment with the City. Bickers concealed that she had received over $650,000 from Mitchell and Richards in that year.

**2. Post-Employment with City of Atlanta and Obstructive Conduct**

The "pay-to-play" scheme continued after Bickers left her position with the City. For example, in 2014, she used her continued influence to procure a multi-million dollar contract for Mitchell's company related to the 2014 "snowpocalypse," even though Mitchell's company owned no snow-clearing or other equipment. From January 2014 to April 2014, Bickers received approximately $800,000 from Mitchell.

In May and July 2014, Bickers laundered the proceeds from the bribery scheme when she laundered her illegal proceeds into assets, specifically a 2014 GMC Denali and four Yamaha WaveRunners, which were purchased by her political consulting company, the Bickers Group. During this time, she spent lavishly, accumulating personal charges from Gucci, Delta Air Lines, the Ritz-Carlton Aruba, Carnival Cruise Line, Disney Resorts, and various home contracting businesses, largely funded by the proceeds of the snowpocalypse bribery scheme.

In the summer of 2015, Bickers learned of the federal investigation into her and her businesses after Mitchell informed her that he was approached and interviewed by FBI and IRS agents. From August 2015 to September 11, 2015, after it became apparent Mitchell was cooperating with federal authorities, Bickers

sought to keep Mitchell from cooperating with authorities through intimidation. On September 11, 2015, Shandarrick Barnes, a close business associate of Bickers, threw a brick inscribed with "Shut up ER" and "Keep your mouth shut" through a window of Mitchell's residence. Bickers was in contact with Barnes shortly before and after the incident. Mitchell has also found numerous dead rats on his property.

### 3. Bribery Scheme in Jackson, Mississippi

In February 2014, the Mayor of Jackson, Mississippi, died in office, which resulted in a Special Mayoral Election in the spring of 2014. Seeing an opportunity to profit, Bickers assisted Tony Yarber with his mayoral campaign without charge to the campaign. Before and after the election, she, Mitchell, Richards, and Keyla Jackson made significant donations to Yarber's election committee. After he was elected, Bickers hosted extravagant parties in Atlanta for Yarber and other Jackson officials that featured strippers, cigars, alcohol, and food in an attempt to influence them and gain their favor in order to obtain city contracts. Yarber won the special election and credited her as a "kingmaker" to local media.

Bickers, Mitchell, and Jackson then actively sought contract work in Jackson, particularly a $16 million dollar EPA wastewater consent decree contract. Not long after the mayor assumed office, Bickers had private meetings with the new mayor and city officials about lucrative contracts the city was planning, upon which she was bidding. On at least one occasion, Bickers informed a City of Jackson official that the mayor had already promised her a contract and that she just needed assistance with making the paperwork look legitimate.

**4. Basis for this Motion**

This case has now been specially set for trial on April 13, 2020. [Doc. 81]. At trial, the United States expects that Bickers will attempt to introduce evidence: (1) that she generally has good character, and (2) specific instances of that good character. But such evidence is inadmissible under the Federal Rules of Evidence, and the Court should exclude evidence of this type.

## Legal Standard and Argument

**1. Relevance and Motion in Limine Standard**

The Constitution provides criminal defendants with the general right to present evidence and call witnesses in their own favor. *See United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004); *see also* U.S. CONST. amends. V, VI. However, such rights are not absolute. *See Hurn*, 368 F.3d at 1365-66. Indeed, it "is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." *United States v. Anderson*, 872 F.2d 1508, 1519 (11th Cir. 1989). Accordingly, defendants are only constitutionally entitled to present evidence that is relevant to an element of the charged offense or to an affirmative defense. *See Hurn*, 368 F.3d at 1365-66; *United States v. Masferrer*, 514 F.3d 1158, 1161 (11th Cir. 2008) ("where the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense … a defendant has no right to introduce that evidence") (internal quotations omitted).

Under the federal rules, evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401; *see* FED. R. EVID.

402 ("Relevant evidence is admissible," while "[i]rrelevant evidence is not admissible"). Notably, even when evidence is relevant, courts may exclude that evidence "if its probative value is substantially outweighed by the danger of … unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403. Trial courts have "broad discretion to determine the relevance and admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).

The purpose of a motion in limine is to allow the court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). To justify exclusion, the moving party must demonstrate that the expected evidence is clearly inadmissible on all relevant grounds. *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp.2d 1350, 1351 (N.D. Ga. 2009) (courts "will grant a motion in limine to exclude evidence only if the evidence in question is clearly inadmissible"); *see also Luce*, 469 U.S. at 41.

**2. Federal Rules of Evidence 404 and 405**

The admission of character evidence for or against a criminal defendant is governed by Federal Rule of Evidence ("FRE") 404(a), in conjunction with FRE 404(b) and the balancing test of FRE 403. FRE 404(a) provides that character evidence "is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait," and is generally referred to as the ban on propensity evidence.

However, FRE 404 contains exceptions to the general ban on propensity evidence. The first exception, FRE 404(a)(2)(A), relates to "pertinent trait(s)" of a

7

criminal defendant. Under this exception, for example, a defendant may present character evidence via reputation or opinion testimony regarding lawfulness, since lawfulness is a pertinent trait in all criminal prosecutions. *See United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981 (Unit A)).[1] If a defendant offers such evidence, the Government may then bring in specific instances of the defendant's conduct to rebut that claim. FED. R. EVID. 404(a)(2)(B). The second and third exceptions, not relevant to this motion, relate to use of such evidence against victims and witnesses.

FRE 405 limits the scope by which these character traits can be shown. Specifically, FRE 405(a) provides that "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Then, on cross-examination, a party may inquire into "relevant specific instances of the person's conduct." FED. R. EVID. 405(a). Specific instances of conduct may also be used when a character trait "is an essential element of a charge, claim, or defense." FED. R. EVID. 405(b).

### 3. The Court should exclude evidence of general good character and specific instances of so-called "good conduct."

The United States asks that the Court exclude any evidence: (1) that Bickers generally has good character, and (2) specific instances of that good character.

Under the Federal Rules of Evidence, a defendant may not provide evidence of possessing a generally good character. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (court properly excluded proffered testimony "to portray [defendant as having] a good character"); *cf. Hewitt*, 634 F.2d at 280 (prevailing

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981.

8

view is that Rule 404(a) precludes a defendant from offering reputation or opinion testimony regarding his "general good character"); *United States v. Cochran*, No. 4:14-CR-022-HLM, 2014 WL 12695800, at *3 (N.D. Ga. Nov. 17, 2014) ("preclud[ing the] Defendant from presenting evidence of his general good character").

Likewise, a defendant may not offer evidence of specific instances of good conduct or the absence of bad conduct. *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) ("specific acts of good character were inadmissible under [the] Rules"); *see United States v. Marrero,* 904 F.2d 251, 259-60 (5th Cir. 1990) (court properly excluded evidence that defendant did not overcharge in certain instances because such evidence is improper under Rule 405 as specific acts of good character); *see also United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) ("testimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)"); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) ("testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught"); *United States v. Morgan*, No. Crim-00-375, 2000 WL 1622748, at *10 (E.D. Pa. Oct. 20, 2000) (excluding evidence of lack of criminal history because: (1) "whether the defendant has broken the law before has virtually no bearing on whether he did so this time," (2) "such evidence may mislead the jury," and (3) the evidence may "improperly cause the jury to by sympathetic").

Judged by these principles, Bickers should not be permitted to introduce evidence that she possessed a generally "good" character – such as that she is:

a. A community participant or civic minded. *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (evidence of "bravery, attention to duty, perhaps community spirit – were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010-11 (D. Md. 1985) ("patriotism" not relevant trait to charge);

b. A kind, moral, or hard-working person. *United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991) (excluding evidence that defendant was a kind man);

c. A "family woman or mother/wife who provides for her family." *See Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a good family man a because it was not a trait relevant to the offense); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (court properly excluded evidence that defendant had devoted his life to caring for a son with cerebral palsy); *cf. U.S. v. Solomon*, 686 F.2d 863, 873-74 (11th Cir. 1982) (properly excluding evidence of defendant's military service and number of children as an improper attempt to interject specific instances of conduct); and/or

d. Religious. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *United States v. Goxcon-Chagal*, 885 F. Supp. 2d 1118, 1158-59 (D.N.M. 2012) ("rule 610 is … designed to avoid a jury drawing improper inferences about a witness' character or credibility in light of the witness' religious beliefs"), *vacated*

>  *on other grounds*, *U.S. v. Medina-Copete*, 757 F.3d 1092 (10th Cir. 2014); *see also* FED. R. EVID. 610.

Similarly, Bickers should not be permitted to put on evidence of specific acts of good conduct – such as incidents: (a) of public service, charitable work, or church activities; (b) of honesty; (c) of the lack of prior bad acts or criminal history; or (d) of any other specific instances of "good" conduct. *Ellisor*, 522 F.3d 1255, 1270; *see Camejo*, 929 F.2d at 613 ("proffered testimony was merely an attempt to portray the defendant as a good character through the use of 'prior good acts'"); *United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) (when defendant "attempted to elicit testimony from witnesses regarding specific instances . . . Each time, the district court correctly determined that although [defendant] was entitled to present character evidence, he could not do so by offering evidence of specific instances of his conduct"); *see also United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (defendant police officer's commendations properly excluded because they were neither "pertinent" nor probative of an essential element); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions"); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (in bribery case, inappropriate to permit testimony that the charged inspector honestly performed his duties in specific instances); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions"); *see also* FED. R. EVID. 404(a); *cf. Barry*, 814 F.2d at 1404 ("letters of commendation were hearsay").

## Conclusion

For the reasons discussed above, the United States respectfully requests that the Court exclude evidence of Bickers's general good character and specific instances of so-called "good conduct."

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/KURT R. ERSKINE
*Assistant United States Attorney*
Georgia Bar No. 249953

/s/JEFFREY W. DAVIS
*Assistant United States Attorney*
Georgia Bar No. 426418

600 U.S. Courthouse ▪ 75 Ted Turner Drive, SW
Atlanta, GA 30303 ▪ 404-581-6000

## **CERTIFICATE OF SERVICE**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Dated: March 5, 2020

/s/ KURT R. ERSKINE
KURT R. ERSKINE
*Assistant United States Attorney*