IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT NO. |
| | ) | 1:18-CR-98-SCJ-LTW |
| MITZI BICKERS | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION IN LIMINE

COMES NOW, the Defendant Mitzi Bickers, by and through undersigned counsel and files this motion in limine in the above-styled case and asks the Court to exclude the following evidence:

## INTRODUCTION

The investigation into this case began in 2014. For the past six years, the government has used their vast resources to interview scores of potential witnesses, many of whom themselves were being investigated at the time, who proffered certain statements in efforts to assist the government and/or help themselves out of trouble. The statements made by these individuals were sometimes inflammatory, speculative, and even nonsensical. Defendant Bickers believes that the government may intend to introduce some or all of the following evidence that is subject to a ruling *in limine*.

The defense contends that the following evidence should be ruled inadmissible and that any mention of, or reference to, the following should be strictly prohibited either through the testimony of government witnesses (as well as physical or documentary evidence) and/or statements of counsel for the government in the trial of this case:

1) <u>Any salacious allegations that defendant Bickers had anything to do with exotic dancers and/or prostitutes.</u>

   A number of potential witness have used derogatory language and referenced a couple of instances in which defendant Bickers allegedly was in some way involved or around women who were hired and/or brought to a particular location in some sort of an exotic or illegal sexual capacity. These claims vary widely and are offensively and unreasonably judgmental; they are also wholly unsubstantiated by any actual evidence.

   Any reference to such activity would be speculative in violation of Federal Rule of Evidence 602, as well as inflammatory and unduly prejudicial in violation of Federal Rule of Evidence 403. There would be no probative value to any mention of these claims to any of the charges in the indictment. Further, as defendant Bickers is a member of the clergy, both employed as a Bishop of the Emmanuel Baptist Church as well as a Chief

Chaplain with the Clayton County Sheriff's Department, the jury may improperly use such evidence to impugn her character. See United States v. Ewings, 936 F.2d 903 (7th Cir. 1991) (defendant's status as a member of the clergy factored into the Court's decision under 403 balancing as the government may try to improperly use evidence in an attempt to attack the defendant's character and show the clerical defendant was not a paradigm of virtue).

2) <u>Any mention of how or on what defendant Bickers chose to spend her income that is not specifically charged in the indictment.</u>

The government has made reference to, in a number of filings and public statements (see ex. Government's Motion in Limine to Exclude Inadmissible Character Evidence, Doc. 87, page 4), that defendant Bickers lived a "lavish lifestyle" and purchased cruises and certain retail items for herself and members of her family. The government has not charged such expenditures as money laundering and they are not remotely relevant to any count in the indictment.

While some Courts have held that evidence of subsequent spending can be admissible in cases with an allegation of financial motive, those cases are clearly distinguishable from the instant matter. For example, courts have allowed this evidence in instances where the sources of income are

otherwise unexplained (see United States v. Lattimore, 902 F. 2d 902, 903 (11th Cir. 1990) (government permitted to introduce evidence that defendant's husband made a cash payment of $ 1,200 on a delinquent loan even though prior to the offense the defendant and her husband had gone without food and borrowed money to pay the mortgage). Here, the reasoning used by the Courts in the other cases does not apply. Defendant Bickers had several sources of income from various legitimate employments and businesses, had been working her entire life and was of middle-age. Further, the spending that the government cites as some evidence pertaining to her guilt was not abnormal or some sort of an aberration in her spending habits.

The likelihood of the government's potential misuse of this type of evidence is foreshadowed in the fact that the government chose to include detail regarding these expenditures in their motion seeking to exclude evidence of defendant Bickers' good character (which as noted in earlier filings begins with five full pages of attempts to disparage defendant Bickers' character before actually getting to any relevant argument). The government's intentional choice of using this type of evidence to disparage the defendant's character in pretrial filings makes it painfully transparent that the government may want to introduce it at trial in the same improper manner. The fact that defendant Bickers purchased a cruise vacation for her

family has no rational bearing or tendency to prove any count in the indictment in violation of Federal Rules of Evidence 402, 403, and 404.

3) <u>Any reference to any past romantic relationships in which defendant Bickers was involved.</u>

   The defense has been made aware that the government has interviewed multiple prior romantic partners of defendant Bickers. As may be expected from prior relationships that ended, much of what was stated in the interviews involved improper opinions, speculation, and commentary related to defendant Bickers' character and dealings within the confines of a relationship. Any discussions of these past relationships and/or testimony from prior partners who do not have any personal knowledge of any fact in issue should not be permitted as they run afoul of Federal Rules of Evidence 602, 402, 403 and 404.

4) <u>Any claim that Pirouette is not a legitimate company doing campaign services work as Pirouette Strategies.</u>

   Certain testimony from witnesses may be introduced by the government who may make statements doubting the legitimacy of Pirouette Company because the entity changed direction from it's initial focus on dance to campaign services and consulting. At its inception, Pirouette was run by Keyla Jackson as a company that provided dance instruction and outreach.

The company changed in focus over time, but kept the same name aside from using a D.B.A. of Pirouette Strategies. Witnesses have made such outlandish claims that went as far as saying that Pirouette was company that provided pole-dancing lessons and taught strippers. Any such claim by a witness would not only be unsubstantiated and clearly factually incorrect, however, it could have an undue prejudicial impact in violation of Federal Rules of Evidence 602, 402, 403, and 404.

5) <u>Any claim that the Emmanuel Baptist Church was not a legitimate place of worship of which defendant Bickers has been the pastor for the past three decades.</u>

The defense has been made aware that similar to above, certain witnesses have made statements doubting the legitimacy of Emmanuel Baptist Church and its role in the lives of it's parishioners and the community at large. Although this would be easily factually disputed, the prejudicial impact of allowing such statements could not be undone. Any similar statement should be not admissible pursuant to Federal Rules of Evidence 602, 402, 403, and 404.

6) <u>Any claim that defendant Bickers helped former Atlanta Mayor Kasim Reed get elected and/or any reference to her personal history with Reed.</u>

The defense is aware from multiple sources, that the government may attempt to introduce evidence related to defendant Bickers' involvement in the campaign for former Atlanta Mayor Kasim Reed and her prior and subsequent relationship with Reed. Much of what is anticipated is unsubstantiated rumor, speculation and/or hearsay and is irrelevant to the charges in this indictment. All of which would run afoul of Federal Rules of Evidence 602, 802, 402, 403, and 404 and should be properly excluded from the trial of this case.

7) <u>Any reference to any past civil litigation, lawsuits, settlements, or bankruptcy filings involving defendant Bickers.</u>

The government has taken the position in two of their Motions in Limine (Docs. 94 and 100) that civil litigation, lawsuits, settlements or bankruptcy filings are not appropriate as substantive or impeachment evidence as it pertains to two of their potential witnesses. Defendant Bickers agrees with that contention as to any unrelated prior action that she may have initiated or been named as a defendant. The distinction between the government's witnesses and any prior litigation sought to be brought against defendant Bickers is that the government witnesses filed civil suits *directly related* to

allegations contained in the instant indictment. Any reference to any prior litigation involving the defendant would not have the same nexus to any counts in the indictment and they should be excluded as irrelevant, not probative and unduly prejudicial in violation of Federal Rules of Evidence 402, 403 and 404.

8) The Court should preclude any testimony by potential witness Theo Tate.

Based on the discovery provided to date, the defense anticipates the government may call Theo Tate to testify. Mr. Tate's interviews indicate he would not have personal knowledge related to the allegations in the indictment and may make statements that are inflammatory, prejudicial, and offensive to a reasonable person and he would merely serve as an improper character witness under Federal Rules of Evidence 404 and 608. Further, his testimony would be irrelevant under Federal Rules of Evidence 401 and 402.

9) Any references to the City of Atlanta Municipal Code.

The government has devoted eight paragraphs in the indictment and substantial discovery to City of Atlanta Code of Ethics and Procurement Code sections. These municipal code references have no bearing on the elements of any count of the indictment and serve only to attempt to confuse and mislead jurors in an attempt to create prejudice against defendant Bickers. Any testimony or argument related to these municipal code

sections would be completely immaterial to the allegations in the indictment and should be excluded under Federal Rules of Evidence 403.

10) <u>Any reference to any other fundraisers held on behalf of former City of Jackson Mayor Tony Yarber.</u>

Various parties interviewed by the government made statements related to fundraisers held on behalf of former City of Jackson Mayor Tony Yarber other than those referenced in Count 3 of the indictment. Those fundraisers, which were not organized or attended by defendant Bickers, are irrelevant to the present indictment under Federal Rules of Evidence 401 and 402 and allowing testimony regarding what allegedly occurred at those fundraisers would be unduly prejudicial to defendant Bickers under Federal Rules of Evidence 403.

11) <u>Any reference to City of Jackson contracts, bidding, and procurement procedures where defendant Bickers was not a participant.</u>

Various parties interviewed by the government made statements as to alleged procurement, bidding, and contract irregularities with regards to City of Jackson projects that did not involve defendant Bickers as part of any prospective bidding team. Testimony about other perceived bidding irregularities on projects that defendant Bickers was not involved with

would only confuse and mislead the jurors and should be excluded under Federal Rules of Evidence 401, 402, and 403.

12) <u>Any reference to former Mayor Tony Yarber's home mortgage.</u>

In their investigation, it appears the government attempted to substantiate a rumor that former Jackson Mayor Tony Yarber's home mortgage was satisfied or forgiven subsequent to his election. It is not alleged that defendant Bickers had any involvement with any payments or loan forgiveness Mr. Yarber received, nor was it substantiated that anything improper occurred regarding that mortgage. Any reference to speculation as to his home being paid off is irrelevant to defendant Bickers and would only serve to prejudice jurors against defendant Bickers if introduced in this trial. It should be excluded under Federal Rules of Evidence 401, 402, and 403.

13) <u>Any reference to any campaign contributions, requests for campaign contributions, campaign financing or fundraising.</u>

In discovery provided to defendant Bickers, along with Paragraph 61 of the indictment, there are substantial references to campaign contributions made by defendant Bickers and others to various campaign committees. Testimony and references to campaign contributions which are legal, protected speech and are not alleged to have been part of any bribery scheme

or other impropriety would be irrelevant under Federal Rules of Evidence 401 and 402 and unduly prejudicial under Federal Rules of Evidence 403.

14) <u>Any remarks generally disparaging to defendant Bickers' character should be summarily disallowed by this Court.</u>

15) <u>Any claims of any other alleged impropriety not properly noticed by the government should be summarily disallowed by this Court.</u>

WHEREFORE, defendant Bickers respectfully requests that this Court grant her Motion in Limine and exclude the above-referenced evidence from the trial of her case.

Respectfully submitted,

*s/Drew Findling*
_____
Drew Findling
Georgia Bar No. 260425

*s/Marissa Goldberg*
_____
Marissa Goldberg
Georgia Bar No. 672798

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | INDICTMENT NO. |
| ) | 1:18-CR-98-SCJ-LTW |
| MITZI BICKERS ) | |
| ) | |
| Defendant. ) | |

CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing party in the foregoing matter with a copy of the within and foregoing Motion:

DEFENDANT'S MOTION IN LIMINE

By electronic service:

> AUSA Kurt Erskine
> AUSA Jeffrey Davis
> AUSA Tiffany Johnson

This 13th day of April, 2020.

Respectfully submitted,

*s/Marissa Goldberg*

_____
Marissa Goldberg