## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**

**v.**

**MITZI BICKERS**

**CRIMINAL CASE**

**No. 1:18-CR-00098-SCJ-LTW**

## ORDER

This matter is before the Court on Defendant's omnibus Motion in Limine (Doc. No. [121]).[1] The Government responded in opposition (Doc. No. [125]), and Defendant replied (Doc. No. [133]). The Court rules as follows.

## I.    BACKGROUND

Defendant was indicted on March 27, 2018. Doc. No. [1]. The Government later issued a Superseding Indictment charging Defendant with multiple counts of bribery, conspiracy to commit bribery, money laundering, wire fraud,

---

[1]  All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

tampering with a witness or informant, and filing false tax returns. Doc. No. [41]. As Defendant notes, however, the Government had been investigating this case for years before Defendant was indicted. See Doc. No. [121], 1. In that time, the Government has interviewed numerous individuals. See id. Defendant now moves to exclude certain evidence, including evidence related to this witness testimony. Id. at 1–2. This matter has been fully briefed (Doc. Nos. [121]; [125]; [133]), and the Court will address each individual motion in limine below.

## II.     LEGAL STANDARD

A motion in limine is a pretrial motion by which a party seeks to exclude inadmissible or prejudicial evidence before it is offered at trial. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984). A motion in limine is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Tonasson v. Lutheran Child & Fam. Servs., 115 F.3d 436, 440 (7th Cir. 1997). "The district court has wide discretion in determining the relevance of evidence produced at trial." Boyd v. Ala. Dep't of Corr., 296 F. App'x 907, 908 (11th Cir. 2008); see also United States v. Nowak, 370 F. App'x 39, 41 (11th Cir. 2010) ("District courts have broad discretion to admit probative evidence, but their discretion to exclude [relevant] evidence under

2

Rule 403 is limited."). To prevail, the moving party must demonstrate that the expected evidence is clearly inadmissible on all relevant grounds. Wilson v. Pepsi Bottling Grp., Inc., 609 F. Supp. 2d 1350, 1351 (N.D. Ga. 2009) ("Court[s] will grant a motion in limine to exclude evidence only if the evidence in question is clearly inadmissible.").

In criminal matters, the Constitution provides defendants with the general right to present evidence and call witnesses in their own favor. See United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004); see also U.S. CONST. amends. V, VI. Such rights are not absolute, however, and "a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." United States v. Anderson, 872 F.2d 1508, 1519 (11th Cir. 1989). Thus, defendants are constitutionally entitled to present evidence only if it is relevant to an element of the charged offense or to an affirmative defense. See Hurn, 368 F.3d at 1363–66; United States v. Masferrer, 514 F.3d 1158, 1161 (11th Cir. 2008) (stating that a defendant has no right to introduce evidence that bears no logical relationship to an element of the offense or an affirmative defense).

Under the federal rules, evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b)

3

the fact is of consequence in determining the action." Fed. R. Evid. 401; see Fed. R. Evid. 402 ("Relevant evidence is admissible," while "[i]rrelevant evidence is not admissible"). But even when evidence is relevant, courts may exclude that evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Trial courts have "broad discretion to determine the relevance and admissibility of any given piece of evidence." United States v. Merrill, 513 F.3d 1293, 1301 (11th Cir. 2008).

## III.   ANALYSIS

Defendant's omnibus motion in limine includes fifteen distinct requests to exclude evidence (Doc. No. [121], 2–11), and the Government has responded to each request (Doc. No. [125]). The Court addresses each request in turn.[2]

### A.   Allegations That Defendant Associated With Exotic Dancers and/or Prostitutes and Claims that Pirouette Company Is Not a Legitimate Company Doing Work as Pirouette Strategies

Defendant states that potential witnesses have referred to instances in which Defendant was allegedly involved with women brought to a certain

---

[2] The Court discusses Defendant's arguments in her reply brief (Doc. No. [133]) only as necessary.

location "in some sort of an exotic or illegal sexual capacity." Doc. No. [121], 2. Defendant contends that these statements "vary widely," "are offensively and unreasonably judgmental," and are "wholly unsubstantiated by any actual evidence." Id. Defendant argues the Court should exclude this evidence as speculative in violation of Federal Rule of Evidence 602, as well as inflammatory and unduly prejudicial in violation of Federal Rule of Evidence 403. Id. Further, Defendant argues that the jury may improperly use such evidence to impugn her character because she is also a clergy member. Id. at 2–3.

Defendant also argues that the Court should not allow the Government to introduce testimony that tends to cast doubt on the legitimacy of Pirouette Company[3] only because the entity changed direction from its initial focus on dance to campaign services and consulting. Id. at 5–6. Defendant further claims that witnesses have falsely stated that Pirouette "provided pole-dancing lessons and taught strippers." Id. at 6. Defendant also argues that these "unsubstantiated

---

[3] The parties refer to this entity by several names, including "Pirouette Strategies, LLC" and "Pirouette Dance Company." See Doc. No. [125], 3. For clarity, the Court will refer to the entity simply as "Pirouette."

and clearly factually incorrect" statements "could have an undue prejudicial impact in violation of Federal Rules of Evidence 602, 402, 403, and 404." Id.

In response, the Government first argues that it does not intend to offer witness testimony that is based on a witness's speculation instead of that witness's personal knowledge. Doc. No. [125], 2–3. The Government further responds that Defendant's relationship with Pirouette and/or exotic dancers is intrinsic to her bribery scheme. Doc. No. [125], 3–4. It states that Pirouette offered dance lessons, including adult exotic dancing courses. Id. at 3. The Government contends that exotic dancers were present at fundraising events that Defendant hosted, and those events are related to charges that Defendant attempted to bribe public officials in Jackson, Mississippi. Id. The Government argues that the Court should not exclude evidence that Pirouette provided adult dancing classes because it is not prejudicial and it is relevant to Defendant's alleged bribery schemes and other criminal conduct. Id. at 3–4. Further, the Government argues that Defendant's alleged involvement with exotic dancers at fundraising events is not character evidence but instead is evidence of conduct that forms the basis for a crime because those dancers were used to gain favor with Jackson officials, who allegedly were later involved in the award of contracts in Jackson. Id. at 4.

6

After review and consideration, the Court agrees with the Government. To the extent dancers allegedly from or who were trained at Pirouette attended the fundraising and other events at issue in this case, the Court finds that these dancers may have been part of the entertainment at these events, which could relate to attempts to influence officials at the events. Thus, the Government may explore the presence of these dancers at the relevant events. The Court does not find that discussion of these dancers is so prejudicial to Defendant that the Court must exclude this evidence. Similarly, because Pirouette is allegedly involved with both these dancers and the fundraisers, the Court finds that the Government may offer evidence related to Pirouette and its role concerning both the dancers and the fundraising events. Finally, as the Government argues, if Defendant believes that the witnesses who may testify about Pirouette lack credibility, she may cross-examine them. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Accordingly, the Court **DENIES** Defendant's motion in limine asking the Court to exclude evidence concerning Pirouette and dancers who allegedly

performed at fundraising events. The Government may pursue testimony about Pirouette's operations and the dancers who performed at the relevant events.

### B. Discussion of Defendant's Expenditures Unrelated to Charges in the Superseding Indictment

Defendant contends that the Government has stated that Defendant lived a "lavish lifestyle" and purchased cruises and certain retail items for herself and members of her family. Doc. No. [121], 3. Defendant further contends that the Government has not charged such expenditures as money laundering, and she also argues that these expenditures "are not remotely relevant to any count in the indictment." Id. Defendant argues that the Court should exclude evidence of these expenditures because there is no allegation of financial motive related to her charges, and Defendant's sources of income account for why she was able to make these expenditures. Id. at 3–5. Defendant argues that these expenditures have "no rational bearing or tendency to prove any count in the indictment in violation of Federal Rules of Evidence 402, 403, and 404." Id. at 4–5.

The Government responds that Defendant's spending habits are probative of numerous issues arising from the crimes charged. Doc. No. [125], 5–9. It argues that courts "frequently find evidence of wealth or spending habits to be admissible." Id. at 6 (citing United States v. Bradley, 644 F.3d 1213, 1272 (11th Cir.

8

2011) & <u>United States v. Feldman</u>, 788 F.2d 544, 556-57 (9th Cir. 1986)). It also

argues it should be permitted to present evidence of Defendant's spending habits

because they are relevant to show motive to commit the crimes charged so that

she could support a preferred lifestyle that her City of Atlanta salary could not

support, to show intent and participation in the crimes charged, and to rebut a

claim of good faith. <u>Id.</u> at 6–8. Additionally, the Government argues that the

probative value of this evidence is not substantially outweighed by the danger of

unfair prejudice, and there is nothing inherently prejudicial about Defendant's

expenditures. <u>Id.</u> at 8–9. Finally, the Government argues that these expenditures

are direct evidence of the conspiracy charges, and thus the Government need not

have charged these expenditures as money laundering in order for evidence of

them to be admissible. <u>Id.</u> at 9.

     The Court agrees with the Government. This court has broad discretion to

admit "wealth evidence" so long as it aids in proving or disproving a fact in issue.

<u>Bradley</u>, 644 F.3d at 1272. And because the Court's discretion to exclude evidence

under Rule 403 is limited, the balance should be struck in favor of admissibility.

<u>Id.</u> Here, the Court agrees with the Government that the wealth evidence here is

probative and relevant because it tends to show spending habits that would

provide a motive to conspire to commit bribery and wire fraud. See United States v. Hess, 691 F.2d 984, 988 (11th Cir. 1982) (affirming use of evidence that tended to show an agreement—and a conspiracy—when "the conspirators shared the common goal of increasing their personal wealth"); see also United States v. Murray, 152 F. App'x 492, 494–95 (6th Cir. 2005) (affirming admission of evidence of the defendant's lavish lifestyle, including evidence of money spent on travel, dining, and other luxuries, because such evidence went to intent and motive for a financial crime); United States v. Feldman, 788 F.2d 544, 557 (9th Cir. 1986) ("Evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain." (quotation omitted)). Similarly, the Court agrees that evidence of Defendant's spending habits is relevant, even if only circumstantially, to demonstrate that she willingly participated in the alleged conspiracy. See United States v. Ewings, 936 F.2d 903, 906 (7th Cir. 1991) ("Spending sprees, like other evidence of pecuniary gain, tend to show participation in crimes where financial enrichment is the motive."). Of course, Defendant may attempt to rebut the Government's argument by showing that her ability to maintain her lifestyle derived from the multiple sources of income she alleges to have had. Either way, the Court ultimately does not find

that the probative value of this wealth evidence is substantially outweighed by the danger of unfair prejudice to Defendant.

Thus, the Court **DENIES** Defendant's request for the Court to exclude evidence relating to Defendant's wealth, expenditures, and spending habits. The Government may offer such evidence, including to show motive and intent relating to, as well as participation in, the charged crimes.

### C.    Reference to Defendant's Past Romantic Relationships

Defendant contends that the Government has interviewed several of Defendant's past romantic partners. Doc. No. [121], 5. Defendant argues that these potential witnesses have provided "improper opinions, speculation, and commentary related to" Defendant's "character and dealings within the confines of a relationship." Id. Defendant argues that the Court should exclude statements from these past partners and/or discussions of past relationships with these individuals "who do not have any personal knowledge of any fact in issue." Id.

The Government responds that Defendant cannot seek to exclude certain witnesses who were directly and indirectly involved in her bribery and money laundering schemes only because those witnesses were also romantic partners. Doc. No. [125], 10. It further states that if it calls prior romantic partners to testify,

11

it will not address "the romantic interworking of those relationships." Id. In any event, the Government argues that these individuals were allegedly involved in Defendant's bribery scheme and may have seen Defendant engage in or discuss criminal conduct, and they should not be excluded only because they had romantic relationships with Defendant. Id. at 10–11.

The Court will not exclude witnesses who may have been involved in the alleged criminal activity or witnessed it unfold simply because these individuals also were once romantic partners of Defendant. If these individuals engaged in or witnessed relevant conduct—including having been involved in the alleged bribery schemes—then their testimony as to those matters is plainly relevant to this case and has probative value. Further, the fact that Defendant once may have been romantically involved with some of these individuals does not disqualify them or necessarily make their testimony unduly prejudicial. If Defendant is concerned that the former romantic partners will not provide accurate or reliable testimony, then Defendant may address that issue through cross-examination. See United States v. Livingston, No. 1:09-CR-072-03, 2010 WL 3260160, at *1–2 (M.D. Pa. Aug. 17, 2010) (denying defendant's motion to exclude former romantic partner's testimony regarding his admissions of prior criminal conduct and

noting that any concerns regarding the former partner's reliability could be addressed on cross-examination).

Accordingly, the Court **DENIES** Defendant's request to exclude testimony from her former romantic partners. The Court will allow such witnesses to testify so long as they can testify about relevant matters and are not offered simply because they were once romantically involved with Defendant.

### D. Discussion of Any Claim that the Emmanuel Baptist Church Was Not a Legitimate Place of Worship of Which Defendant Has Been the Pastor for the Past Three Decades

Defendant contends that potential witnesses have made statements casting doubt on the legitimacy of Emmanuel Baptist Church—the church of which Defendant is a pastor—and the church's role in the lives of its parishioners and the community. Doc. No. [121], 6. Defendant contends that such statements are factually false and unduly prejudicial in violation of Federal Rules of Evidence 602, 402, 403, and 404. Id.

In response, the Government rejects Defendant's contention that it intends to impugn the legitimacy of the Emmanuel Baptist Church as a place of worship. Doc. No. [125], 4. However, the Government states that witnesses may testify that Defendant used the church as a meeting place for political campaigning and to

13

discuss bribes and other matters concerning her alleged criminal conduct. <u>Id.</u> at 5. Thus, the Government argues, the church's role as a meeting place to plan criminal conduct is relevant and intrinsically intwined with the alleged criminal conduct. <u>Id.</u> Moreover, the Government argues that if Defendant states that she had several sources of income to support her various expenditures, then the Government should be able to discuss the church's ability to compensate Defendant. <u>Id.</u> And, the Government contends, if Defendant is permitted to offer her work in the church as evidence of a pertinent character trait, the Government should be permitted to rebut that evidence. <u>Id.</u>

First, the Government states that it does not intend to impugn the church's legitimacy, which appears to address some of Defendant's concerns. In any event, the Government is correct that if witnesses testify that Defendant used the church as a meeting place for political campaigning and to discuss bribes and/or other matters that relate to the alleged criminal schemes, then the church and the meetings that took place there are relevant to the charged conduct. The Court also agrees that to the extent Defendant is permitted to offer her work in the church as evidence of a pertinent character trait, then the Government should be allowed to rebut that evidence. <u>See</u> Fed. R. Evid. 404(a)(2)(A).

14

Accordingly, the Court **DENIES** Defendant's request insofar as it seeks to exclude all potentially negative references to the Emmanuel Baptist Church. The Government may offer evidence that relates to the Emmanuel Baptist Church as long as it is relevant to the charges against Defendant.

> ### E.   <u>Discussion of Any Claim that Defendant Helped Former Atlanta Mayor Kasim Reed Get Elected and/or Any Reference to Defendant's Personal History with Reed</u>

Defendant anticipates that the Government will attempt to introduce evidence related to (1) Defendant's involvement in the campaign for former Atlanta Mayor Kasim Reed and (2) Defendant's prior and subsequent relationship with Reed. Doc. No. [121], 7. Defendant contends that much of this evidence constitutes "unsubstantiated rumor, speculation and/or hearsay and is irrelevant to the charges in this indictment." <u>Id.</u> Defendant argues that the Court should exclude such evidence as violative of Federal Rules of Evidence 602, 802, 402, 403, and 404. <u>Id.</u>

The Government counters that Defendant provides no basis for excluding her relationship with Reed and that the relationship is central to her bribery of City of Atlanta officials. Doc. No. [125], 10. The Government elaborates that the relationship with Reed explains Defendant's access to certain public officials and

15

provides "critical context to [Defendant] being hired to work for the City after Reed was elected, her relationships with individuals in the Reed administration, and her ability to leverage those relationships to engage in bribery." Id. at 11–12. Thus, the Government argues, Defendant's relationship and work with Reed are "inextricably intertwined in her later scheme to bribe members of Reed's administration." Id. at 12.

The Court agrees with the Government. Defendant's relationship with Reed, role in his campaign, and contacts with people in Reed's administration relate to the charges that she engaged in bribery schemes involving other public officials. Furthermore, Defendant's relationship with Reed contextualizes her being hired to work for the City of Atlanta, which of course contextualizes the charges that she engaged in bribery schemes while a City of Atlanta employee. Thus, the Court finds that Defendant's relationship with Reed is relevant to and probative of the alleged bribery scheme. Nor will discussion of Reed be so unduly prejudicial that the Court must exclude this evidence despite its relevance.

Thus, the Court **DENIES** Defendant's request to exclude evidence relating to her relationship with Reed. The Government may offer evidence about Reed's and Defendant's relationship that is relevant to the charges against Defendant.

16

**F.**   **<u>Discussion of Any Past Civil Litigation, Lawsuits, Settlements, or Bankruptcy Filings Involving Defendant</u>**

Defendant contends that the Court should exclude evidence concerning prior litigation that is unrelated to the allegations in the instant indictment. Doc. No. [121], 7–8. Defendant argues that any reference to prior litigation involving Defendant and that is irrelevant to this action should be excluded as irrelevant, not probative, and unduly prejudicial in violation of Federal Rules of Evidence 402, 403, and 404. <u>Id.</u> at 8.

The Government responds that Defendant's motion lacks specificity and leaves the Government and Court unable to determine which litigation she seeks to have excluded. Doc. No. [125], 16. Further, the Government argues that prior litigation that is not remote in time and that reflects on Defendant's credibility or her financial entanglements with her alleged co-conspirators may be relevant to the crimes charged and show intent and motive to commit the bribery scheme. <u>Id.</u> at 16–17. And, the Government argues, if Defendant made false statements in prior court filings, then those statements are probative of her character for truthfulness and the crimes charged. <u>Id.</u>

Defendant replies to reiterate that she is moving to exclude *unrelated* civil litigation that has no nexus to the presently charged conduct. Doc. No. [133], 8.

17

For example, Defendant cites civil lawsuits that are unrelated to the charges in this matter and in which she was named a defendant when she served on the Atlanta Board of Education. Id. Defendant also states that the Government's arguments as to Defendant's allegedly false statements in prior litigation is speculative because the Court cannot determine whether such a false statement would be probative of any matter in this litigation. Id.

To start, the Court agrees with the Government that Defendant's request is unspecific in a way that makes it difficult for the Court to determine exactly what evidence it is considering. That being said, Defendant and the Government appear to agree that the Government should not be permitted to present evidence concerning prior litigation that is entirely unrelated to this action. The Court concurs that evidence related to prior litigation that has no reasonable nexus with this case should not be offered. However, the Court does not see why it should exclude evidence concerning prior civil litigation that does have some nexus to this matter. Moreover, the Court agrees with the Government that prior civil actions may become relevant for matters such as character for truthfulness, so long as the Government has a reasonable basis for believing that Defendant actually made false statements in the other litigation. See United States v. Patela,

18

578 F. App'x 139, 142 (3d Cir. 2014) (finding that defendant's misrepresentations to a court in prior civil litigation relating to an earlier mortgage loan fraud "spoke to issues beyond [the defendant's] character" and "demonstrated his capacity to knowingly perpetuate fraud").

Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's request regarding evidence of prior litigation. The Government shall not offer evidence concerning prior civil litigation involving Defendant unless that civil litigation relates to the charges in this criminal action. However, if an otherwise unrelated prior civil litigation becomes relevant for impeachment or other admissible rebuttal purposes, the Court may consider allowing the Government to offer evidence as to those cases. Additionally, the Government may offer evidence of prior civil litigation that has a reasonable nexus to the charges in this criminal action. Because the Court is not issuing this ruling with a specific set of prior civil cases in mind, the Court will consider objections at trial relating to specific prior civil cases.

### G. Testimony by Potential Witness Theo Tate

Defendant anticipates that the Government may call Theo Tate to testify. Doc. No. [121], 8. Defendant contends that Tate has no personal knowledge of the

matters in the indictment, "may make statements that are inflammatory, prejudicial, and offensive to a reasonable person," and "would merely serve as an improper character witness under Federal Rules of Evidence 404 and 608." Id. Defendant also argues that Tate's testimony would be irrelevant under Federal Rules of Evidence 401 and 402. Id.

The Government responds that Defendant fails to explain why the Court should exclude Tate from testifying other than Defendant's unsubstantiated fear that Tate will make inflammatory, prejudicial, and offensive statements. Doc. No. [125], 17. The Government contends that even this argument is meritless because Tate drove Defendant and others in a limousine for events and entertainment that was allegedly funded by Defendant. Id. Thus, the Government argues, Tate has personal knowledge of what he observed during those trips, which includes observations that relate to Defendant's scheme to bribe Jackson officials. Id. Thus, the Government argues that Tate will provide relevant, probative testimony, and Defendant has not shown why the Court should exclude Tate. Id. at 17–18.

The Court agrees with the Government. Tate allegedly drove a limousine for Defendant and others allegedly involved in the subject bribery schemes. Also, some of these trips are alleged to have been to fundraising and other events that

Defendant funded and which are related to this criminal action and, specifically, may be probative of the alleged bribery schemes concerning City of Jackson officials. Thus, Tate may be able to testify as to matters that he directly witnessed in the course of his work driving Defendant. Defendant's fears that Tate may make inflammatory or offensive statements is speculative and does not show that Tate's testimony as to relevant matters would be so unduly prejudicial that the Court should not allow it. And the Court sees no other reason at this point to categorically exclude Tate from testifying. Of course, if Tate begins to make unduly prejudicial or offensive statements at trial, Defendant may object to those statements, and the Court can instruct the jury as needed.

Accordingly, the Court **DENIES** Defendant's request to preclude Tate from testifying at trial. The Government may offer Tate to testify.

### H.   Discussion of or Reference to the City of Atlanta Municipal Code

Defendant states that the Government's indictment and discovery have focused much attention on the City of Atlanta Code of Ethics and Procurement Code. Doc. No. [121], 8. Defendant argues that these code references have no bearing on any count of the indictment and would "serve only to attempt to confuse and mislead jurors in an attempt to create prejudice" against Defendant.

Id. Thus, Defendant argues that the Court should exclude any testimony or argument related to these municipal code sections as irrelevant and violative of Federal Rule of Evidence 403. Id. at 8–9.

The Government responds that the Court has already held that the ethics and procurement codes are relevant because they contextualize Defendant's alleged conduct and explain the responsibilities of public officials who must file financial disclosures. Doc. No. [125], 12–13. The Government contends that the Court should reject Defendant's revived, unsubstantiated arguments because the ethics and procurement codes remain relevant to and probative of Defendant's alleged bribery scheme for the reasons the Court earlier provided. Id. at 13–14.

The Court agrees with the Government. These codes help contextualize Defendant's alleged activities and explain what financial disclosures certain city employees must make, as well as what conduct is prohibited. Under these codes, city officials must engage in certain reporting to avoid conflicts of interest and other issues related to personal finances, and it may be important for the jury to have context as to city employees' obligations as to these matters. Also, evidence that Defendant violated these codes may be relevant to and probative of the alleged bribery schemes insofar as they show that Defendant knew of her

obligations under the codes yet did not properly report her finances. Moreover, these codes are not inherently inflammatory or prejudicial in the context of this criminal action.

Accordingly, the Court **DENIES** Defendant's request to exclude evidence of the City of Atlanta Code of Ethics and Procurement Code and Defendant's compliance with those codes. The Government may offer evidence of both so long as they are relevant to and/or probative of the charges in this action.

## I.      Reference to Other Fundraisers Held on Behalf of Former City of Jackson, Mississippi Mayor Tony Yarber

Defendant states that individuals interviewed by the Government have made statements related to fundraisers held on behalf of former City of Jackson, Mississippi Mayor Tony Yarber other than those referenced in Count 3 of the indictment. Doc. No. [121], 9. Defendant alleges that these fundraisers do not relate to this action because she did not organize or attend them. Id. Accordingly, Defendant argues that the Court should exclude testimony regarding what allegedly occurred at these fundraisers as irrelevant under Rules 401 and 402 and unduly prejudicial under Rule 403. Id.

The Government argues in response that it will explore fundraising events only if they relate to Defendant's conduct, which includes events in which she

was not involved directly in fundraising efforts but during or for which she paid for food and entertainment for public officials. Doc. No. [125], 14. The Government argues that Defendant's financial involvement in these events provides context for her alleged bribery schemes and tends to support the existence of these schemes. Id. at 14–15.

Defendant replies that she was a career political consultant and thus participated in many fundraisers, which does not constitute evidence of the alleged bribery scheme. Doc. No. [133], 6. In short, Defendant maintains that her participation in these fundraisers does not make it more probable that she has bribed politicians. Id. at 6–7.

To start, the Government and Defendant appear to agree that the Court should not offer evidence concerning fundraisers and other political events that do not relate to Defendant's conduct. As to the contested points, however, the Court agrees with the Government. Defendant's involvement in fundraisers and similar events—even if she did not directly organize them—may be relevant if, at these events, Defendant paid for food and entertainment for other public officials who had or would later have some involvement with or relation to the alleged bribery schemes or other criminal activity. The fact that certain events

24

were not identified in the indictment does not necessarily render evidence about them inadmissible so long as they are relevant to the criminal activity alleged in the indictment. And while the Court tends to agree with Defendant that it would be natural for Defendant, given her role, to be involved in political fundraisers, the Court also agrees with the Government that Defendant has presented no convincing argument that the Court should exclude evidence of fundraising events other than those discussed in the indictment.

Accordingly, the Court **DENIES** Defendant's request to exclude evidence concerning fundraising and similar events that were not directly discussed in the indictment. The Government may offer evidence concerning such events so long as the evidence contextualizes or has a nexus with the alleged bribery schemes or other criminal activity alleged in the indictment.

### J.   <u>Reference to City of Jackson Contracts, Bidding, and Procurement Procedures in Which Defendant Was Not a Participant</u>

Defendant states that certain of the Government's interviewees have made statements "as to alleged procurement, bidding, and contract irregularities with regards to City of Jackson projects that did not involve [Defendant] as part of any prospective bidding team." Doc. No. [121], 9. Thus, Defendant argues that the Court should exclude testimony about bidding irregularities on projects in which

25

Defendant was not involved because such testimony would confuse and mislead jurors. <u>Id.</u> at 9–10.

The Government responds that Defendant engaged in certain irregularities that relate to city projects in a manner that shows her influence over City of Jackson officials, which is probative of her alleged bribery scheme in Jackson. Doc. No. [125], 15. Thus, the Government argues that the Court should allow this evidence to the extent Defendant's conduct reflects her ability to assert influence over Jackson officials. <u>Id.</u>

The Court agrees with the Government that evidence of "irregularities" in contract bidding may relate to Defendant and the charges in this criminal action even if Defendant herself was not directly on the bidding teams. For example, the Government states that former employees of the City of Jackson witnessed Defendant act in a way that influenced City of Jackson officials and the contract bidding process, even when she was not on the bidding teams. The Court agrees that such evidence of influence is probative of her bribery scheme in Jackson because it demonstrates her ability to assert influence over those officials.

Thus, the Court **DENIES** Defendant's request to exclude evidence about City of Jackson bidding procedures and processes in which Defendant was not

26

directly involved. The Government may introduce evidence relating to such bidding processes or teams insofar as it reflects Defendant's ability to influence City of Jackson officials and is probative of the alleged bribery scheme.

### K.    Reference to Former Mayor Yarber's Home Mortgage

Defendant alleges that the Government has in its investigation "attempted to substantiate a rumor that former Jackson Mayor Tony Yarber's home mortgage was satisfied or forgiven subsequent to his election." Doc. No. [121], 10. Further, Defendant states that the indictment does not allege that Defendant was involved with any payments or loan forgiveness that Yarber received, or that anything improper occurred regarding that mortgage. Id. Thus, Defendant argues, the Court should exclude reference to Yarber's home being paid off as speculative and irrelevant to Defendant, and also because it would serve only to prejudice jurors against Defendant. Id. In response, the Government states that it does not intend to offer speculative witness testimony, and it specifically states that it does not intend to introduce evidence relating to Yarber's home mortgage. Doc. No. [125], 2–3.

At this time, the Court does not have enough evidence to determine with finality whether allegations as to the satisfaction of Yarber's home mortgage are

27

speculative or irrelevant to this criminal action. In any event, the Government stated clearly that it does not intend to introduce evidence relating to Yarber's home mortgage. Accordingly, at this time, Defendant's request to exclude this evidence is **DENIED as moot**. However, if the Government now intends to offer evidence regarding Yarber's home mortgage, the Court may consider arguments at trial concerning whether the evidence is relevant and admissible.

### L.    Reference to Campaign Contributions, Requests for Campaign Contributions, Campaign Financing, or Fundraising

Defendant states that the Government's discovery refers to campaign contributions that Defendant and others made to various campaign committees. Doc. No. [121], 10. Defendant contends that such campaign contributions are legal, protected speech and are not alleged to have been part of any bribery scheme. Id. at 10–11. Thus, Defendant argues that the Court should exclude such evidence as irrelevant and unduly prejudicial. Id.

The Government responds that the Court already held that evidence of campaign contributions may be admissible in this case because the Constitution does not protect an attempt to influence public officials through bribery. Doc. No. [125], 12–13. Thus, the Government argues, whether Defendant made political donations to get something in return remains relevant in this case. Id. at 13.

The Court maintains its prior holding and agrees with the Government that campaign contributions may be relevant to the bribery charges, especially if it can be shown that Defendant made donations with the expectation that she would receive something in return. And her contributions remain unprotected speech if they were used to influence public officials through bribery. See United States v. Menendez, 132 F. Supp. 3d 635, 639 (D.N.J. 2015) ("[T]he Constitution does not protect an attempt to influence a public official's acts through improper means, such as the bribery scheme that has been alleged in this case."). Because Defendant's contributions are relevant to the charges, the Government may offer evidence as to those matters.

Thus, the Court **DENIES** Defendant's request to exclude evidence as to her campaign contributions. The Government may offer evidence about campaign contributions that relate to or share a nexus with the charges in the indictment.

### M.   Any Remarks Generally Disparaging Defendant's Character or Claims of Other Alleged Impropriety Not Properly Noticed by the Government

Defendant contends without argument that the Court should exclude remarks that are generally disparaging to Defendant's character and claims of other alleged impropriety not properly noticed by the Government. Doc. No.

29

[121], 11. The Government responds that Defendant does not specify whose impropriety should be excluded and otherwise fails to establish that certain evidence is clearly inadmissible. Doc. No. [125], 18. Moreover, the Government argues that Defendant's requests are contrary to the Rules of Evidence, which, for example, allow the Government to offer rebuttal evidence if Defendant offers evidence of a pertinent character trait. Id. at 18–19. Thus, the Government argues that the Court should deny Defendant's conclusory arguments as to these undefined categories of evidence. Id. at 19.

The Court agrees with the Government that Defendant's requests are so broad that the Court cannot tailor an order that excludes discernable evidence. Also, the Government is correct that some of the evidence that Defendant asks to be categorically excluded may be admissible under certain circumstances, such as for rebuttal evidence or impeachment. Thus, at this point, the Court **DENIES** Defendant's requests, but the Court may consider specific objections at trial.

## IV.   CONCLUSION

The Court's orders as to each motion in limine are provided above. Because this Order disposes of the omnibus motion (Doc. No. [121]), the Court **DIRECTS** the Clerk to terminate the pendency of that motion.

30

**IT IS SO ORDERED** this 27th day of December, 2021.

/s/ Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**