## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**

**v.**

**MITZI BICKERS**

**CRIMINAL CASE**

**No. 1:18-CR-00098-SCJ-LTW-1**

## ORDER

This matter appears before the Court on the Government's Motion to Exclude Elvin R. Mitchell, Jr.'s Remote Prior Misconduct. Doc. No. [95]. [1] Defendant responded in opposition. Doc. No. [105]. On December 16, 2021, the Court ruled that the Motion to Exclude was premature and ordered Defendant not to introduce any testimony about Mr. Mitchell's remote prior misconduct in opening statements or during the trial prior to receiving the Court's approval. Doc. No. [172], 11. On March 9, 2022, the Court reminded the parties that a ruling

_____

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

on the Motion to Exclude was still outstanding and directed the parties to submit their arguments about the evidence subject to the Motion to Exclude to the Court.

On March 11, 2022, after the third day of the trial, the parties gave arguments related to this Motion to Exclude. The Court now rules as follows.

## I.     BACKGROUND

A thorough recitation of the facts is included in the Court's December 16, 2021, Order and will not be repeated here. Defendant argued for the admission of four different pieces of evidence. First, Defendant argued that all evidence related to Mr. Mitchell's 2006 non-prosecution agreement with the United States and Mr. Mitchell's subsequent dealings with the FBI are admissible under Fed. R. Evid. 608, 609, and 404(b). Second, Defendant argued that Mr. Mitchell's 2015 dealings with the Dekalb County Schools should be admitted to contextualize Mr. Mitchell's 2006 dealings with Fulton County Schools. Third, Defendant argued for the admission of evidence regarding Mr. Mitchel "moving money around,"[2] and opening bank accounts and/or businesses in Mr. Mitchell's ex-wife's or Mr. Mitchell's mother's names under Fed. R. Evid. 404, 607, 608. And

---

[2] Mr. Mitchell's ex-wife made these allegations during her divorce proceedings with Mr. Mitchell.

2

Fourth, Defendant argued that various civil cases involving Mr. Mitchell are admissible under Fed. R. Evid. 608.

The Government did not substantively respond to Defendant's arguments regarding Mr. Mitchell's involvement with Fulton County or Dekalb County Schools at the hearing. The Government stated that it had not reviewed the referenced documents before the hearing.

After the hearing, the parties agreed to provide the Court with the FBI file containing information about Mr. Mitchell's work with Fulton County Schools in 2006 and Dekalb County Schools in 2012. On March 13, 2022, the Government filed its surreply responding to Defendants' arguments at the hearing. Doc. No. [189]. On March 14, 2022, Defendant filed its surresponse. Doc. No. [192]. The Court derives the following facts from counsel's arguments at the hearing, the briefs, and the documents provided to the Court.

### A.  Fulton County School System

In 2006, the FBI investigated Mr. Mitchell for potential corruption in connection with work Elvin R. Mitchell Construction Company ("ERMC") provided to Fulton County Schools. During that investigation, Mr. Mitchell agreed to cooperate with the FBI by wearing a recording device and having his

phone(s) wiretapped. Doc. No. [189-2], 54–55. Mr. Mitchell agreed to cooperate with the FBI in hopes of receiving a non-prosecution agreement from the United States Attorney's Office. Id. at 45. Defendant also argues that the FBI, in connection with the United States Attorney's Office, paid Mr. Mitchell $50,000.00 a year to induce public and elected officials to take bribes.

Defendant argues that evidence of Mr. Mitchell's non-prosecution agreement with the United States, Mr. Mitchell's cooperation agreement with the FBI, the terms of Mr. Mitchell's cooperation agreement with the FBI, Mr. Mitchell's three-year debarment from accepting work from Fulton County, and the FBI and/or the United State's Attorney's Offices payment of $50,000.00 to Mr. Mitchell is admissible under Fed. R. Evid. 404(b), 608, and 609.

At the hearing, the Government did not substantively respond to Defendant's arguments because the Government argued that it had not had a chance to review the documents Defendant referenced.

On March 13, 2022, the Government filed its Motion for Leave to File a Surreply. Doc. No. [189]. In the Government's Surreply, it argued that (1) the suggestion that Mr. Mitchell was paid $ 50,000.00 to cooperate with the FBI is not supported by the documents (id., 9); (2) there is no good-faith basis to suggest

that Mr. Mitchell was working with the FBI between 2008 and 2012 (id. at 9–10); (3) Mr. Mitchell hired Defendant as a marketing consultant before the FBI authorized him to work with marketing consultants (id. 10–11); (4) the documents do not contain an executed non-prosecution agreement (id. 11); and (5) the documentation does not support that Mr. Mitchell was debarred from obtaining contracts from Fulton County or anywhere else (id. at 11–12).

On March 14, 2022, Defendant filed its Surresponse. Doc. No. [192]. Defendant argues that the documents support that Mr. Mitchell worked with the FBI in 2010, 2011, and 2012. Doc. No. [192], 4. In interviews between 2015 and 2017, Mr. Mitchell mentions that he had a non-prosecution agreement with the United States. Id. at 5. Defendant's work with the FBI from 2006 to 2012 is intrinsic evidence because Defendant knew that Mr. Mitchell was working with the FBI. Id. at 7. Specifically, "[t]he fact that [Mr.] Mitchell was an active cooperator with the FBI during the periods of 2006–2012, and that this was known by the Defendant, is inexorably intertwined with Defendant's theory of the case." Id. at 8.

5

### B.   Dekalb County School System

Starting in 2007, the Dekalb County School System was engaged in civil litigations against Heery International, Inc. Heery International, Inc. provided construction services to Dekalb County Schools, and ERMC was the minority contractor on the project. See Heery Int'l, Inc. v. Dekalb Cnty Sch. Dist., No. 1:08-CV-1560-JOF (filed Apr. 25, 2008); Heery Int'l Inc. v. Dekalb Cnty. Sch., 07CV2532 (Dekalb Cnty. Super. Ct. filed Feb. 20, 2007); Heery Int'l v. Dekalb Cnty. Sch., 10cv10314 (Dekalb Cnty. Super. Ct. filed Aug. 25, 2010). Defendant argues that this evidence is admissible to contextualize Mr. Mitchell's previous dealings with Fulton County Schools. The Government again did not substantively respond to Defendant's arguments at the hearing because it argued that it had not had a chance to review the documents that Defendant referenced.

### C.   Divorce Proceedings

Defendant seeks to introduce evidence of Mr. Mitchell "moving money around," opening bank accounts and/or businesses in both his ex-wife's and his mother's names. Mr. Mitchell's wife made these allegations during their divorce proceedings. Defendant argues that she should be able to cross-examine Mr. Mitchell about this information because it is relevant to Mr. Mitchell's

manipulation. The Government responded, arguing that this information is not probative of truthfulness and, therefore, there is no reason for its admission. Defendant also argued that she is not attempting to introduce the evidence under Fed. R. Evid. 608(b), but rather it is relevant for cross-examination because the government is introducing evidence of Defendant engaging in the same activity.

In Defendant's Surresponse, Defendant also argues that evidence stemming from Mr. Mitchell's divorce proceedings is intrinsic to this case. Doc. No. [192], 9. Specifically, Defendant argues that Mr. Mitchell listed his ex-wife as the "principal, owner, partner, or corporate office" of Cascade Building Solutions in the certification affidavit for 2011 emergency bridge repair with the City of Atlanta. Id. Defendant argues that this evidence is intrinsic to this case because the 2011 emergency bridge repair is alleged to be part of the conspiracy. Id.

### D.    Civil Litigation

The Court asked Defendant whether she intended to introduce evidence regarding Mr. Mitchell's involvement in previous civil litigations. Defendant stated that she did not bring the files regarding Mr. Mitchell's civil litigations to Court that day and that she does not intend to question Mr. Mitchell about his past civil litigations. The Court stated that evidence of civil litigations that deal

7

with cheating, embezzlement, or fraud is admissible under Fed. R. Evid. 608(b) as probative of Mr. Mitchell's character for truthfulness.

## II.     LEGAL STANDARD

A motion in limine is a pretrial motion by which a party seeks to exclude inadmissible or prejudicial evidence before it is offered at trial. See Luce v. United States, 469 U.S. 38, 40 n.2 (1984). A motion in limine is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Tonasson v. Lutheran Child & Fam. Servs., 115 F.3d 436, 440 (7th Cir. 1997). "The district court has wide discretion in determining the relevance of evidence produced at trial." Boyd v. Ala. Dep't of Corr., 296 F. App'x 907, 908 (11th Cir. 2008); see also United States v. Nowak, 370 F. App'x 39, 41 (11th Cir. 2010) ("District courts have broad discretion to admit probative evidence, but their discretion to exclude [relevant] evidence under Rule 403 is limited."). To prevail, the moving party must demonstrate that the expected evidence is clearly inadmissible on all relevant grounds. Wilson v. Pepsi Bottling Grp., Inc., 609 F. Supp. 2d 1350, 1351 (N.D. Ga. 2009) ("Court[s] will grant a motion in limine to exclude evidence only if the evidence in question is clearly inadmissible.").

In criminal matters, the Constitution provides defendants with the general right to present evidence and call witnesses in their own favor. See United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004); see also U.S. CONST. amends. V, VI. Such rights are not absolute, however, and "a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." United States v. Anderson, 872 F.2d 1508, 1519 (11th Cir. 1989). Thus, defendants are constitutionally entitled to present evidence only if it is relevant to an element of the charged offense or to an affirmative defense. See Hurn, 368 F.3d at 1363–66; United States v. Masferrer, 514 F.3d 1158, 1161 (11th Cir. 2008) ("[W]here the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense . . . a defendant has no right to introduce that evidence . . . .") (internal quotations omitted).

Under the federal rules, evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; see Fed. R. Evid. 402 ("Relevant evidence is admissible," while "[i]rrelevant evidence is not admissible"). But even when evidence is relevant, courts may exclude that evidence "if its probative value is substantially outweighed by the danger of . . .

9

unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Trial courts have "broad discretion to determine the relevance and admissibility of any given piece of evidence." United States v. Merrill, 513 F.3d 1293, 1301 (11th Cir. 2008).

## III.   ANALYSIS

The Court rules as follows.

### A.   Fulton County Schools

The Court finds that portions of Mr. Mitchell's relationship with the FBI, in conjunction with Mr. Mitchell's work with Fulton County Schools, is admissible on cross-examination under Fed. R. Evid. 609(b). "[E]vidence that happens to include prior misconduct still may be admissible when offered to show the witness' possible bias or self-interest in testifying. United States v. Calle, 822 F.2d 1016, 1021 (11th Cir. 1987). However, "[a] good-faith basis for questioning is required" and "[a] party cannot ask groundless questions of a witness." United States v. Fernandez-Martinez, 317 F. App'x 929, 938–939 (11th Cir. 2009) (citing Michelson v. United States, 335 U.S. 469, 481 (1948), United States v. Crutchfield, 26 F.3d 1098, 1101–02 (11th Cir. 1994)). The Court reviewed the documents provided by the parties memorializing the FBI's investigation into

Mr. Mitchell's in connection with his 2006 involvements with the Fulton County Schools and subsequent relationship with the FBI. The Court finds that Defendant has a good-faith basis for cross-examining Mr. Mitchell about whether Mr. Mitchell agreed to work with the FBI starting in 2006[3], the period where Mr. Mitchell worked with the FBI, whether Mr. Mitchell wore a recording device and/or had a wiretap placed on his phone during that period, whether Mr. Mitchell owed Defendant any money at the time when he was cooperating with the FBI[4], and whether Mr. Mitchell discussed his involvement with the FBI with

---

[3] The Government argues that this is not relevant because Mr. Mitchell concluded his work with the FBI in 2007; therefore, Mr. Mitchell's work with the FBI is not relevant because it is outside the relevant time period of the charged offenses. Doc. No. [189-1], 5. Defendant argues that Mr. Mitchell was still meeting with FBI agents into 2012; therefore, Mr. Mitchell's work with the FBI occurred during the relevant time period of the charged offenses. Doc. No. [192], 4–5. After the Court's independent review of the documents, the Court finds that Defendant has a good-faith basis to inquire about whether Mr. Mitchell was working with the FBI in 2012.

[4] Either party, on direct examination or cross-examination may ask Mr. Mitchell if he owed any money to Defendant, regardless of if it is connected to Mr. Mitchell's work with Fulton County Schools and his subsequent cooperation with the Government. This evidence is directly relevant to underlying conspiracy, Mr. Mitchell's bias, and Mr. Mitchell's credibility. Fed. R. Evid. 402, 607, 608. Similarly, testimony about Defendant working for Mr. Mitchell in 2006 is admissible because it is directly relevant to the underlying conspiracy. Fed. R. Evid. 402.

11

Defendant[5]. The Court finds that these discrete topics are relevant to probe Mr. Mitchell's bias and credibility. See Fed. R. Evid. 608(b); 607.

While this evidence is admissible to establish Mr. Mitchell's potential bias, under Fed. R. Civ. P. 608, this evidence is not admissible as prior bad acts under Fed. R. Evid. 404(b). Defendant argues that this evidence is relevant to show Mr. Mitchell's bias because there is overlap between when Mr. Mitchell was working with the FBI and when Defendant is charged with conspiring with Mr. Mtichell. First, Mr. Mitchell's history of working with the FBI is not a prior bad act. Second, because the FBI authorized Mr. Mitchell to induce public and elected officials to take bribes, the act of him following that directive is not a prior bad act. See Doc. No. [189-2], 16

> [Mr. Mitchell] will at the direction of the investigating agents meet with public officials, elected officials and other city and local government officials to obtain business contracts and other favorable treatment for bribe payments and other benefits. Source will also hire marketing consultants, who are associated to the public

---

[5] Defendant asserts that in a 2018 interview, Mr. Mitchell alleged that Defendant was aware of Mr. Mitchell's involvement with the FBI prior to Mr. Mitchell's receipt of a non-prosecution agreement. Doc. No. [192], 6. The Court cautions Defendant that if she elicits testimony about Mr. Mitchell's 2018 interview, she opens the door for the Government to ask Mr. Mitchell if Defendant encouraged Mr. Mitchell to bribe federal government officials. This evidence is admissible as a plan or scheme. Fed. R. Evid. 404(b); Doc. No. [192-2].

officials, that may operate as bagmen to accept bribe
payments on behalf of the public officials.

Therefore, this evidence is not admissible as a "prior bad act" under Fed. R. Evid.

404(b). Thus, Defendant may question Mr. Mitchell about the above-listed topics,

but Defendant may not introduce any extrinsic evidence of Mr. Mitchell's

involvement with the FBI. Fed. R. Evid. 608(b); see also United States v.

Matthews, 168 F.3d 1234, 1244 (11th Cir. 1999), amended on other grounds,

United States v. Moore, 181 F.3d 1205 (11th Cir. 1999) (per curium) ("[i]f the

witness denies the conduct, such acts may not be proved by extrinsic evidence,

and the questioning party must take the witness' answer, United States v. Cohen,

631 F.2d 1223, 1225–26 (5th Cir.1980); United States v. Herzberg, 558 F.2d 1219,

1223–24 (5th Cir.1977), unless the evidence would be otherwise admissible as

bearing on a material issue of the case.").

At this time, the Court cannot determine whether Mr. Mitchell entered into

a non-prosecution agreement with the United States in connection with Mr.

Mitchell's work with Fulton County Schools. The documents provided by the

parties state that Mr. Mitchell agreed to cooperate with the FBI in hopes of

receiving a non-prosecution agreement. Doc. No. [189-2], 39. The documents also

contain a notation that in 2012 law firm King & Spalding unearthed a non-

13

prosecution agreement between Mr. Mitchell and the United States. Doc. No. [189-5], 43. However, absent from the documents is the actual non-prosecution agreement. The Government argues that there is no evidence of a non-prosecution agreement between the United States and Mr. Mitchell. Doc. No. [189-1], 11. Additionally, the Government argues that there is no evidence that Mr. Mitchell was debarred from working with Fulton County or anyone else for any period of time. Id. at 11–12. Defendant argues that Mr. Mitchell has consistently stated that he had a non-prosecution agreement with the United States in connection with his work with Fulton County Schools. Doc. No. [192], 6. Defendant attaches a letter dated July 25, 2006, from the United States Attorney's Office to Mr. Justin A. Thornton, Esq. regarding a non-prosecution agreement. Doc. No. [192-3]. This email seems to contain a draft non-prosecution agreement intended for Mr. Mitchell; however, the non-prosecution agreement is unsigned and undated. Id. at 3.

At this time, the Court cannot determine whether there is a good-faith basis for allowing Defendant to question Mr. Mitchell about the existence of a non-prosecution agreement or his potential debarment from working with Fulton County. The Government argues that even if there was a non-prosecution

agreement or debarment, this evidence is not admissible because it is not probative of Mr. Mitchell's character for truthfulness. Doc. No. [189-1], 11–12.

The Court finds that Mr. Mitchell's non-prosecution agreement and its terms may be probative of Mr. Mitchell's bias in favor of helping the Government. Accordingly, the Court will question Mr. Mitchell about the existence of a non-prosecution agreement and whether Mr. Mitchell was debarred from working with Fulton County outside of the presence of the jury. At which point, the Court will rule on whether Defendant may cross-examine Mr. Mitchell about these outstanding issues.

The Court finds that Defendant may not question Mr. Mitchell about whether he was a paid cooperating witness. The Court finds that Defendant has not established that she has a good-faith basis to believe that Mr. Mitchell received any payments from the FBI. Defendant points to one letter from an FBI special agent to the United States Attorney's Office, where the special agent states that he and an Assistant United States Attorney discussed and agreed that it would be possible to pay Mr. Mitchell $50,000 in exchange for Mr. Mitchell's help in the FBI investigation. Doc. No. [189-1], 32. However, the parties have not provided the Court with any documentation that this payment was ever

15

authorized, a record of any payment transactions, or a letter from the United States Attorney's Office confirming that Mr. Mitchell could, in fact, be paid $50,000.00 for cooperating with the FBI. Rather, the FBI Field Office Annual Source Reports indicate that Mr. Mitchell never received any payments from the FBI. See Doc. Nos. [189-4]. The FBI Field Office Annual Source Report for the period from July 13, 2011, to July 13, 2012, states that Mr. Mitchell has received a lifetime of aggregate payments in the amount of $0.00 from the FBI or any other agency.[6] Doc. No. [189-4], 5. Thus, the Court finds that Defendant does not have a good-faith basis for asserting that Mr. Mitchell was paid to cooperate with the FBI because there is no evidence of any authorization or record of payments.

The Court finds that there is relatively little probative value in allowing Defendant to question Mr. Mitchell about whether the FBI paid him because the documentation shows the opposite. The Court also finds that the probative value is substantially outweighed by the potential prejudice of asking Mr. Mitchell whether he was paid to cooperate with the FBI. Accordingly, the Court finds that

---

[6] The July 13, 2012, FBI Field Office Annual Report is the final Annual Report related to Mr. Mitchell. Doc. No. [189-4], 5. The documents show that the FBI placed Mr. Mitchell on pending inactive status on March 2, 2012 (Doc. No. [189-5], 43), and that the FBI officially closed Mr. Mitchell's cooperating witness file on November 23, 2012 (id. at 39).

under Fed. R. Evid. 403, Defendant may not question Mr. Mitchell about whether the FBI paid him.

The Court cautions Defendant if she introduces evidence of Mr. Mitchell's work with the Fulton County Schools and subsequent cooperation agreement, Defendant has opened the door for the Government to question Mr. Mitchell about Defendant's involvement with Mr. Mitchell in connection with Fulton County Schools.[7]

### B.   Dekalb County Schools

Defendant argues that she should be able to cross-examine Mr. Mitchell about his dealing with Dekalb County Schools because there were allegations that Mr. Mitchell committed fraud. See Heery Int'l, Inc. v. Dekalb County School District, No. 1:08-CV-1560-JOF, 2009 WL 481656, at *1–2 (Feb. 25, 2009) [8]. Defendant argues that this evidence is admissible to give context to Mr. Mitchell's Fulton County Schools dealings.

---

[7] The documents provided by the parties' state that Defendant was employed by ERMC on June 21, 2006, during the period where he was being investigated by the FBI. Doc. No. [189-3], 13.

[8] The federal claims were dismissed, and the court declined to exercise supplemental jurisdiction over the remaining state law claims. Heery Int'l, 2009 WL 481656, at *5.

In <u>Heery Int'l</u>, a company that Mr. Mitchell was working with sued Dekalb County Schools for retaliation and wrongful termination. <u>Id.</u> Dekalb County Schools counterclaimed, asserting that Mr. Mitchell defrauded Dekalb County Schools. <u>Id.</u> Ultimately, on March 6, 2013, the case was voluntarily dismissed. <u>Heery Int'l v. Dekalb County School</u>, 10cv10314 (Dekalb Cnty. Super. Ct. Mar. 6, 2013).

The Court finds that any evidence regarding Mr. Mitchell's involvement with the Dekalb County Schools is precluded under Fed. R. Evid. 404(a). This evidence is of a specific bad act, whose only purpose is to prove that Mr. Mitchell acted in accordance with his character trait for defrauding government officials. The Court does not find that a Fed. R. Evid. 404(b) exception applies to this case. Additionally, this evidence cannot be used to probe Mr. Mitchell's truthfulness because there was no ultimate finding that Mr. Mitchell engaged in any kind of fraud, nor is there any showing that Mr. Mitchell admitted to engaging in an untruthful act. Thus, evidence concerning Mr. Mitchell's dealings with Dekalb County Schools is excluded.

C.    **Divorce Proceedings**

The Court finds that allegations that Mr. Mitchell moved money around or opened bank accounts and/or business in his ex-wife's or mother's name are not admissible on cross-examination. Defendant argues that during Mr. Mitchell's divorce proceedings, Mr. Mitchell's ex-wife accused Mr. Mitchell of "moving money around" and opening businesses and/or bank accounts in her's and Mr. Mitchell's mother's names. Additionally, Defendant argues that this evidence is intrinsic evidence because Mr. Mitchell listed his ex-wife as the owner of the company that contracted with the City of Atlanta for a 2011 emergency bridge repair. Doc. No. [192], 9. Specifically, Defendant argues that this evidence is intrinsic because it concerns a transaction alleged to be part of the charged conspiracy. Id.

The Court does not find that this evidence establishes Mr. Mitchell's character for truthfulness or untruthfulness. There is nothing inherently untruthful about Mr. Mitchell opening these accounts or businesses. Because there is nothing inherently untruthful about these activities, this evidence is not admissible under Fed. R. Evid. 608(b).

Defendant also argued that this information about Mr. Mitchell is relevant because similar allegations are being made about Defendant. This evidence is character evidence of Mr. Mitchell's pertinent trait, which is prohibited under Fed. R. Evid. 404(a). Defendant has not argued that any of the Fed. R. Evid. 404(b) exceptions apply, which would allow for this evidence's admission. Further, this would not evidence, motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). Additionally, evidence that a witness and Defendant share the same trait is not a basis for introducing character evidence about a witness. The Federal Rules of Evidence allow defendants to introduce this type of evidence about a victim. See Fed. R. Evid. 404(a) (allowing evidence of a victim's pertinent trait). But, here, Mr. Mitchell is not the victim; therefore, this character evidence about this trait is inadmissible.

Defendant also argued that this information is relevant intrinsic evidence because it involves a project that is part of the charged conspiracy. Doc. No. [192], 9. However, the Court does not find that this evidence is relevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the

action." Fed. R. Evid. 401. Defendant is not accused of being in a conspiracy with Mr. Mitchell's ex-wife. The fact of consequence this action is whether Mr. Mitchell was awarded the 2011 emergency bridge contract in connection with a conspiracy to commit bribery. Whether Mr. Mitchell listed his ex-wife as the owner of the construction company that was awarded the 2011 emergency bridge contract is not relevant or probative of that fact. Therefore, this evidence is not relevant. Thus, the Court finds that this evidence is not admissible under Fed. R. Evid. 608 or 404 and is not relevant under Fed. R. Evid. 402.

Accordingly, Defendant may not cross-examine Mr. Mitchell about moving money around, opening bank accounts and/or businesses in his ex-wife's or his mother's names.

### D.   Civil Litigation

Defendant may cross-examine Mr. Mitchell on his involvement in civil cases, where Mr. Mitchell was found liable for cheating, embezzlement, or fraud, or where Mr. Mitchell admitted to engaging in an untruthful act. The Court finds that this evidence may be admissible under Fed. R. Evid. 608(b) as probative of Mr. Mitchell's character for truthfulness.

21

IV.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion to Exclude Evidence of Elvin R. Mitchell, Jr.'s Remote Previous Misconduct. Doc. No. [95].

The Court **DENIES** the Government's Motion to Exclude Evidence of Mr. Mitchell's agreement to work with the FBI starting in 2006, the period where Mr. Mitchell worked with the FBI, Mr. Mitchell's agreement to wear a recording device and/or have his phone wiretapped during that period, whether Mr. Mitchell owed Defendant any money while he was cooperating with the FBI, discussions between Mr. Mitchell and Defendant about Mr. Mitchell's involvement with the FBI, and civil cases where Mr. Mitchell was either found liable for or admitted to cheating, embezzlement or fraud or where Mr. Mitchell admitted to engaging in an untruthful act are admissible under Fed. R. Civ. P. 608(b). Accordingly, Defendant may question Mr. Mitchell about these topics but may not introduce extrinsic evidence regarding these issues.

The Court **GRANTS** Government's Motion to Exclude Evidence of the FBI's agreement to pay Mr. Mitchell for his cooperation, allegations of fraud concerning Dekalb County Schools, and allegations that Mr. Mitchell moved

22

money around, and Mr. Mitchell opened businesses in his ex-wife's or his mother's names, and opened bank accounts in his ex-wife or his mother's names. Accordingly, this evidence is inadmissible.

The Court **RESERVES** judgment on the admissibility of a non-prosecution agreement and debarment. The Court will question Mr. Mitchell about these topics outside of the presence of the jury and, at that time, will rule on their admissibility.

**IT IS SO ORDERED** this 14th day of March, 2022.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

23